West Jersey Railroad Co. v. Thomas.

---

THE WEST JERSEY RAILROAD COMPANY vs. THOMAS and others.

1. An award can not be reviewed and corrected, or set aside, at law or in equity, because it is erroneous, or because it is plainly excessive, unless the excess is clearly demonstrated, and is so great that it is not possible to account for it except by corruption or dishonesty in the arbitrators. It

West Jersey Railroad Co. *v.* Thomas.

will not be set aside, as a verdict at law or a master's report in equity, because clearly erroneous and against the weight of evidence.

2. Evidence as to the cost of operating most railroads, in the absence of any proof to show the rates of fare per mile on those roads, is no guide to ascertain the net profits of a particular road.

3. The true method of calculating the value of an unexpired lease is by annuity tables; by multiplying the clear annual value of the lease by the value of one dollar per annum for the unexpired term, at the rate of lawful interest.

4. An agreement between parties to an award, in the presence of the arbitrators, at the close of the evidence, that the case should be submitted to the arbitrators upon written arguments of counsel, upon a specified copy of the evidence and the exhibits in evidence, and that the award was to be made without any further intercourse with either party, and that if the two arbitrators were unable to agree, the case should be submitted to the third arbitrator chosen, upon the same arguments and proofs, without the intervention of the parties, is legal and valid. But such agreement is not proved here; and if it was, it will not justify an award made by a third arbitrator without reading the arguments of counsel, on which it was agreed to be submitted without further notice to the parties.

5. When a new arbitrator is chosen by the original arbitrators, either party has the right to adduce additional testimony and additional arguments.

6. Whether an award was ready to be delivered in time, or whether being ready to be delivered out of the state is a compliance with the condition of the submission, are questions of law to be disposed of by the court in which the suit is brought on the award.

7. A court of equity will not set aside an award because not delivered in time, when the delivery was restrained by injunction at the suit of the party making the objection.

8. Where, after an award was determined upon and reduced to writing, an injunction was served upon the arbitrators against signing *and* delivering it, there was no impropriety in their signing it in accordance with advice of counsel for the party in whose favor the award was made.

9. The principles stated in the opinion at the former hearing, approved. 6 *C. E. Green* 205.

Argued on final hearing, upon bill, answer, and proofs.

*Mr. A. Browning* and *Mr. Williamson,* for complainants.

*Mr. P. L. Voorhees* and *Mr. Cuyler,* for defendants.

THE CHANCELLOR.

This cause has been before the court on a motion to dissolve the injunction. On the argument then had several of the questions on which the decision of the cause must rest, were discussed and decided. And on the argument now had the views expressed in the opinion then given are not controverted, but are assumed, for the purpose of this argument, to be in accordance with established principles. That opinion, reported in 6 *C. E. Green* 205, contains a statement of most of the facts in the cause, and will render unnecessary a re-statement of them, except so far as new facts have been shown in the evidence since taken.

At that time there was no evidence before the court from which corruption or partiality in making the award could be charged, and the question was not then raised. There is now evidence from which it is insisted that such corruption or partiality can be inferred. An award can not be reviewed and corrected or set aside, either at law or in equity, because it is erroneous, or because it is plainly excessive, unless the excess is clearly demonstrated, and is so great that it is not possible to account for it except by corruption or dishonesty in the arbitrators. It will not be set aside, as a verdict at law or a master's report in equity will be, because clearly erroneous and against the weight of evidence.

The arbitrators in this case were to adjudge the value of the lease put an end to by the complainants. That lease was at a rent of half of the gross earnings of the road, the lessees to pay all expenses of operating the road and keeping it in repair. The complainants insist that this unexpired term, instead of being worth $159,437, as reported by the arbitrators, was of no value, because, by the experience of most railroads, the cost of operating a road is more than half its gross earnings. Evidence was introduced to show that this was the case, and that, although in a few railroads the expenses were less, or about thirty-six per cent. of the gross earnings, yet even this would make the amount awarded far above the value of the lease.

In the first place, the results in other roads can be no guide to ascertain the net profits on this, unless the fare per mile on those roads is compared with the fare on this. The cost of operating a road is the same, whether the fare is two cents or five cents a mile, but the net profit in one case may be four times that in the other. It does not appear that there was any proof of this before the arbitrators. There is no such proof here. Counsel stated on the argument, that there was no proof in the case to show the rate of fare on the road of the complainants.

In the second place, there was proof before the arbitrators of the amount of the yearly net profits of this lease for the four years and eight months which had run. This was proved by the books of the lessees, and their testimony before the arbitrators, neither of which were impeached. These accounts show that the average net profits for the expired part of the term was $26,000 yearly, and for the year of which part had expired, about $29,000 per annum. This is after paying rent and all expenses.

Again, one of the lessees had been employed on this road as a conductor, another as engineer, and the third as a financial agent. They gave their time and personal attention to the operation of the road, and as it was only twenty-three miles long, could personally superintend everything, and thus save much of the waste and plunder that many roads submit to. The road was a middle section of a long line, and as to most of their business they were saved the terminal expenses, which are always considerable, and the expense of maintaining the organization. All salaries were paid by the complainants out of their half of the receipts.

By the agreement made by the defendants with R. D. Wood, one of the principal stockholders, and a director of the company, who negotiated the lease for them, and guaranteed to them $2000 clear annual profit, they were to pay him one-third of the net income. If one-third is deducted from this $26,000, and $3000 per annum for compensation, or as wages of the defendants, who gave their time to the

road, it would leave a balance of $14,444 as the clear annual value of the lease itself. The value of this for fifteen years and four months can be ascertained exactly by annuity tables, which are calculated with as much certainty as the multiplication table, and of which courts will take notice as they do of that table.

By these tables, one dollar per annum for fifteen years and four months, calculated at the rate of lawful interest in this state, is $9.22, which makes the value of $14,444 yearly income for that term $133,163, or more than $26,000 less than the amount awarded. This calculation, thus made upon the evidence produced by the defendants themselves, of the annual income of the road, and made on mathematical principles, is correct, and shows the outside value of the lease, and would be sufficient to set aside a verdict or a master's report for that amount, founded upon these facts. Besides this, by a provision of the lease, it was to terminate upon the death of any one of the three lessees. This made the lease less valuable by the gross sum it would cost to insure all three lives for that amount for fifteen years and four months, which would be no inconsiderable sum.

But, although this award thus appears to me to be clearly excessive, and to a very large amount, I cannot set it aside on that account, unless under circumstances such that it must be a necessary conclusion that the arbitrators could not have made it in good faith and believing it to be correct. If they had adopted some other mode of computing value besides the annuity table, which to me appears to be the only true guide, but may not have seemed so to them, they might have arrived at the conclusion they did in good faith. If they had calculated on the basis of interest at six per cent., the lawful interest in their own state, as they most probably would, it would make more than $9000 above the value calculated at seven per cent. Or, if they had, either by inadvertence or upon a mistaken judgment of their duty, omitted to allow $3000 yearly for the personal services of the defendants, it would, upon the value of $9.22 given by the

annuity table for each dollar of annuity for this unexpired term, have amounted to three thousand times that sum, or more than the excess of the award over the above calculation. As I cannot determine that they did not award upon some such error in judgment, I must not reach the conclusion that this award was obtained by corruption or partiality. Arbitrators of high character and standing as these are, cannot be charged with corruption or partiality, because they differ from the court that passes upon the award as to the best method of arriving at conclusions, however confident the court may be in the correctness of its own.

But the most serious matter, and that most relied upon for setting aside the award, is the alleged misconduct of the arbitrators in proceeding, after the choice of the third arbitrator, to make their award, without giving the complainants an opportunity to produce evidence or to be heard by counsel before such third arbitrator. The fact that they did so proceed is shown and not disputed. And the position laid down in the former opinion in this case, that " when a new arbitrator was chosen, the complainants had the right to adduce additional testimony and additional arguments," is not questioned here.

But the defendants set up in their answer, and contend that they have established by proof, that at the close of the evidence before the arbitrators, it was there agreed, in their presence, between the parties, that the case should be submitted to the arbitrators upon written arguments of the respective counsel, to be furnished by a certain day, and upon the copy of the evidence taken by the stenographer employed for that purpose, and the exhibits in evidence; and that the award was to be made without any further intercourse with either party; and that if the two arbitrators were unable to agree, the case should be submitted to the third arbitrator chosen, upon the same arguments and proofs, without the intervention of the parties.

Such an agreement, if made, not being an agreement to confer jurisdiction, but only regarding the manner of pro-

ceeding, is, in my view, legal and valid, and if complied with, would entirely overcome this objection to the award.

But there is a direct contradiction in the proof, by several witnesses on each side, as to the fact of this agreement having been made. The arbitrator chosen by the defendants, two of the three defendants, and their two counsel, testify, with more or less explicitness, that such agreement was made. The arbitrator chosen by the complainants, their president and superintendent, and their two counsel, testify, in the same way, that there was no such agreement. The number of witnesses on each side is equal. All of them are men of unimpeached character, and the counsel on both sides are men of high and unimpeachable character, and of very great intelligence. All, of course, may be mistaken. In such case it is a very difficult task, and not a pleasant one, to decide this question. But in this case I am not entitled to say "*non mei est tantus lites compromere.*" I must discharge my duty.

In the first place, the burden of proof is on the defendants. To sustain the award, they must show that there was an agreement to dispense with an opportunity to be heard before a third arbitrator. As in all cases where the burden of proof is undertaken, they must show it, not beyond doubt, but beyond reasonable doubt, so that the court shall feel convinced that such was the fact.

In the second place, more dependence has to be placed on the evidence of the counsel of both parties than on that of the parties themselves, or even that of the arbitrators. It was the counsel, and the counsel only, who made, or on the part of the complainants could make, the agreement. The testimony of the senior counsel for the defendants, though cautiously given, and not so directly explicit as that of their junior counsel, yet covers the whole ground, and shows that there was such an understanding, and that he understood it was concurred in by the counsel of the complainants. The testimony of the junior counsel is more direct and positive, but not more conclusive. But neither testify to any language used;

or any act by either of the counsel for complainants, that constituted their consent or acquiescence. I can have no doubt but that they, at the time, understood them to agree to this arrangement. But in such a disagreement of testimony, the words or acts from which such agreement or acquiescence was inferred are important, as they may be such that would not be understood by the other side as an acquiescence. And at this distance of time between the occurrence and the testimony, the inference drawn by the witnesses might, and naturally would, be taken by them for the fact. On the other hand, there was no agreement unless the counsel of the complainants concurred in and consented to it. They, at the time, must have known whether they consented to it or not. Their recollection of this is of a fact, not of language. They both testify, clearly and positively, that they did not make or assent to any such agreement. The fact that the senior counsel, a month afterwards, when he first heard of a third arbitrator being chosen, answered that no proceeding could be had without notice to the complainants, and advised and instituted a suit to enjoin them, shows what his recollection must have been at that time. My conclusion from the whole evidence is, that the conversation at the time was such that the counsel for the defendants understood that it amounted to such agreement, and that the counsel for the complainants did not so understand it, nor did they intend to assent to such agreement; and that there was no such meeting or concurrence of minds as is required to constitute an agreement. Had the language used by the counsel for the complainants been proved, it might be such that would justify the defendants' counsel in the inference that an assent was intended, even if such was not the intent, and thus estop the complainants from denying it. As the case stands before me, I must conclude that both parties and their counsel have sworn to the truth; that the defendants and their counsel understood that there was an assent to the proposition, and that the counsel of the complainants did not intend to assent to it; and no

language or act is shown that will bind to an assent not intended.

But if this agreement was clearly proved, it will not justify an award made by a third arbitrator without hearing or reading the proofs or the arguments of counsel, on which it was agreed to be submitted without further notice to the parties. I do not see any cause of complaint on the ground that the evidence was not submitted to or read by the third arbitrator. He read the stenographer's copy of the testimony. The printed railroad reports were shown and offered to him. He was familiar with their contents, and had a tabular statement of the results drawn from them. And having read the written testimony, he might have concluded, and I think he would have rightly concluded, that this case was to be decided by the proof of the net profits which had been realized on this road under its peculiar situation, and not by those realized on other roads.

But it is clear that the arguments of both the counsel for the complainants were not submitted to or considered by him. The arguments of both counsel for the defendants were printed, and were submitted to him. A part of the argument of the senior counsel of the complainants was printed, and was submitted to him; but the part of his argument that was written, and the argument of the able junior counsel for the complainants, which was in writing and not printed, was not submitted to or read by him. Both had been submitted to and read by the two original arbitrators. He testifies that he read the printed arguments, but has no recollection of any written arguments. The original arbitrator, who had these two written arguments, says that he took them with him to one of the meetings with the third arbitrator, but that they were not used or read, and that he took them away with him, and that he retained them until after the award.

If refusing to hear the parties or their witnesses is such misconduct in arbitrators as will set aside their award, then to hear the counsel of one party in full, and those of the other only in part, or not at all, is greater misconduct, and is

sufficient reason to set it aside. Nor is this a mere technical or formal objection, especially in a case like this, in which the arbitrators have come to a conclusion that appears wrong, although such as cannot be corrected here. If the third arbitrator had read and considered in full the arguments of complainants' counsel, he might have been shown, and avoided the errors into which they appear to have fallen. For these reasons, the award must be set aside on the ground of misconduct in the arbitrators. This misconduct does not, in the slightest degree, reflect upon the character or integrity of either of the arbitrators, but consists in their disregarding certain requirements of law, of which they were probably uninformed. Mr. Baird proceeded in the absence of the complainants, under the understanding, as testified to by him, that they had agreed that he should do so. Mr. Wilder did not know that there were any other arguments to be considered than the printed arguments which he had received. And Mr. Kenney, who had these written arguments, and should have delivered them to Mr. Wilder, no doubt omitted to do so through inadvertence, or from the impression that Mr. Wilder's opinion was so firmly made up that they would have produced no effect.

The questions, whether the award was ready to be delivered in time, or whether being ready to be delivered out of the state is a compliance with the condition of the submission, are questions of law, to be disposed of by the court in which the suit is brought upon the award. Whatever disposition might be made of the question at law, a court of equity would never set aside an award because not delivered in time, when the delivery was restrained, as in this case, by injunction at the suit of the party making the objection. The advice given to the arbitrators by the counsel of the defendants, that an injunction against signing *and* delivering an award, did not restrain them from signing if they did not deliver, and that they not only might, but ought to sign it, was wise and judicious. After their award was determined upon and reduced to writing, there was no impropriety in the arbitrators taking

advice from the counsel of the defendants as to the effect of the injunction upon their action. Their judicial duty was at an end, and the defendants had an important interest in the correctness of their proceeding.