[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 35 
Plaintiff appeals from a judgment of the Bergen County Court, Law Division, striking plaintiff's complaint and entering final judgment in favor of defendant and against plaintiff on defendant's counterclaim in the sum of $768.75.
Plaintiff instituted suit against defendant on a chose in action assigned to him by his father, Isaac Pargman, representing three quarterly payments of $250. each, allegedly due and payable by defendant to plaintiff's assignor under the terms of an agreement entered into between plaintiff's assignor and the defendant under date of October 4, 1946, whereby Isaac Pargman assigned to the defendant the sole and exclusive right and license to manufacture and sell throughout the United States the electrical vaporizers claimed in letters patent theretofore issued to Isaac Pargman. The agreement provided that defendant pay plaintiff's assignor quarterly a royalty of two cents per unit for each unit sold; that defendant was not required to *Page 36 
manufacture and sell the product before January 1, 1948. Paragraph 5 of the agreement provides:
"5. In anticipation of royalty to be earned by the Licensor in the exercise of the License conveyed by this agreement, the Licensee agrees to advance to the Licensor the sum of Two Hundred and Fifty ($250.00) Dollars quarterly, dating from January 15th, 1947. Such payments are to be charged against such royalty aswill accrue to the Licensor during the period of accounting inwhich the advance was made." (Underscoring ours)
Defendant made payments of the first three quarterly payments of $250. to plaintiff's assignor and then discontinued further payments. Defendant never exercised his privilege to manufacture and sell the electric vaporizers and under the terms of the agreement gave the licensor notice of termination thereof on February 3, 1948. Subsequently, in May, 1948, plaintiff sued defendant in his own name as assignee of the claim for the unpaid quarterly payments. Defendant filed an answer denying plaintiff's right of recovery and counterclaiming against the plaintiff, demanding judgment of $750. for the three quarterly payments made by defendant to plaintiff's assignor. At the trial, on motion of defendant, the court struck the plaintiff's complaint on the ground "that the said complaint is not sufficient in law and the facts not being in dispute", and directed that "judgment should be entered on the counterclaim in favor of the defendant and against the plaintiff."
Plaintiff contends that the court below erred in entering an affirmative judgment in favor of defendant and against plaintiff on defendant's counterclaim, whereas it should have entered judgment in favor of plaintiff against defendant for the amount claimed to be due under the complaint.
We are of the opinion that the court erred in striking plaintiff's complaint. Defendant contends that the quarterly payments of $250. were "simply intended to be advances in payments on account of any royalty that might accrue. They were obviously to be credited if the royalties exceeded that sum, or returned if the royalties did not reach such sum". We do not share this view. With respect to the payment of royalty, the agreement provides that "each payment will cover the accrued *Page 37 
royalty for the quarter ended on the last day of the month preceding the month in which payment will be made". Under paragraph 5, defendant was required to make the quarterly payments commencing January 15, 1947, "In anticipation of royalty to be earned by the licensor" and "such payments are to becharged against such royalty as will accrue to the licensorduring the period of accounting in which the advance was made."
(Underscoring ours) "The word (advance) in its strictly etymological significance indicates money paid before or in advance of the proper time of payment, and implies a looking forward to a time when the money will be due to the recipient." 2C.J.S., p. 497. From a careful consideration of the agreement, we reach the conclusion that the defendant was required to make the quarterly advance payments whether any royalties had accrued to the benefit of the licensor or not, and that such advance payments were intended to provide minimum royalty payments to the licensor. Otherwise, the licensor would receive no benefit whatever from the contract, inasmuch as, under its terms, no other payments become due unless the defendant chooses to manufacture or sell the vaporizers. The language employed in the agreement is similar to that frequently found in employment or agency contracts and we are of the opinion that it should have a similar construction. We think the case of Roofing Sales Co. v.Rose, 103 N.J.L. 553 (Sup.Ct. 1927), is applicable here. There, the court construed a contract somewhat analogous to that under consideration here, and held:
"We find ourselves unable to give a construction to the contract sub judice that the moneys advanced to the agent were in the nature of loans. This position we would be forced to take in order to permit a recovery by the plaintiff. We can find nothing in the contractual relation between the parties which expressly or impliedly tends to establish that there was a meeting of the minds that the advanced payments made by plaintiff to the defendant were contingent on the defendant's earning commissions equal to the amounts advanced.
"* * * We cannot, without undertaking to make a contract for the parties, hold from the facts as they appeared before the trial judge and now before us, that there was in the mind of either contracting party that the defendant was to assume personal liability to repay to the plaintiff if the former's earned commissions fell below the sums advanced to him, the difference arising therefrom." *Page 38 
It is significant that defendant voluntarily made the first three quarterly payments to plaintiff's assignor, notwithstanding the fact that he had not manufactured any of the vaporizers, and thereafter never made any demand or instituted any action to recover the payments until it filed its counterclaim after plaintiff's suit had been instituted against it. The agreement fails to reveal any provision which expressly or impliedly indicates that the advance payments were subject to repayment, either in whole or in part.
Assuming, but not conceding, that plaintiff was not entitled to recover on his assigned claim, even then the defendant would not be entitled to an affirmative judgment against plaintiff. Defendant concedes that an assignee of a contract is usually not liable to the other contracting party to the contract assigned, unless such liability has been expressly or impliedly assumed. It argues that plaintiff assumed the agreement in question and is liable to defendant for repayment of the sum of $750. paid by defendant to plaintiff's assignor. It is obvious that defendant has an erroneous conception of the cause of action instituted by plaintiff. Nowhere in the record does it appear that plaintiff sued under an assignment of the agreement in question, but rather that the claim sued upon was merely an assignment of a chose in action comprising the defaulted quarterly payments. No citations are necessary in support of the well settled doctrine, that recovery and judgment on a counterclaim or setoff against an assignee, where based on a demand against the assignor, cannot be affirmative; it can be defensive only.
The judgment below is reversed, with costs. We direct that the cause be remanded to the court below for such further proceedings as are in conformity with this determination. *Page 39