23 N.J. Super. 116 (1952)
92 A.2d 625
ANCO PRODUCTS CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
T V PRODUCTS CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1952.
Decided November 13, 1952.
*118 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. George F. Losche argued the cause for the appellant (Messrs. Hein & Smith, attorneys).
Mr. Archibald Kreiger argued the cause for the respondent.
The opinion of the court was delivered by SMALLEY, J.S.C. (temporarily assigned).
This is an appeal by the defendant-appellant from a judgment of the Superior Court, Law Division, Passaic County, entered upon an award of arbitrators pursuant to R.S. 2A:24, which award was confirmed by order of the court and judgment entered in favor of the plaintiff and against the defendant in the sum of $6,478.26.
The award of the arbitrators having been filed, the plaintiff moved to confirm. The defendant by counter-motion sought to modify the award.
*119 Defendant now argues that the award of the arbitrators must be set aside because a mistake in law appears on the face of the award, and, secondly, the net profits should have been calculated over the 3 year period and not on the profit month basis.
On January 30, 1950 the parties entered into an agreement whereby plaintiff was engaged as technical production consultant until January 31, 1953.
The contract provided that plaintiff was to receive as compensation 25% of the net profits to the defendants and to be paid by the defendant as follows: "Such compensation shall be paid by T V to Anco in monthly installments not later than the 15th day of each month. Each such monthly payments shall be predicated upon the net profits as disclosed by the financial statement for the month next preceding the respective payments, * * *"; then follows provisions for accountants, and examination of the defendant's books. The contract further limits the defendant's liability to $75,000 for the period of plaintiff's services as set forth in the agreement.
The contract further states:
"T V has concurrently herewith paid to Anco the sum of Twenty-five thousand ($25,000) Dollars as an advance on said compensation fee, which sum shall be applied against the obligation and liability of T V in the manner following: From the monthly payments to be made by T V to Anco under the provisions hereof there shall be deducted ten (10%) per cent of such net profits (being 40% of such payments) which amount so deducted shall be credited against the Twenty-five Thousand ($25,000) Dollars advanced as aforesaid and such deductions shall be made each month consecutively until the said advance has been fully repaid and cancelled."
It is not disputed that during the period from February to May 1950 defendant paid various amounts amounting to $5,075.71. It then ceased making any further payments.
On April 23, 1951 plaintiff started an action to recover these monthly payments.
Defendant filed an answer and counterclaim denying that *120 any sums were due as installment payments and claimed that certain storage charges and rent were due from plaintiff.
Defendant moved at the pretrial conference, in accordance with the agreement between the parties, that the matter should be submitted to arbitration and that the suit pending be stayed. Thereafter a consent order was entered submitting the matter at issue to arbitration providing for the manner, method and terms of submission. The pertinent part of the order is as follows:
"6. There shall be submitted to the arbitrators all demands, claims, issues and matters in dispute between the parties arising out of the said contract of January 30, 1950, a bill of sale dated January 30, 1950, and agreement dated January 30, 1950, between the parties, and a letter dated January 30, 1950, addressed to T V Products Corporation by Anco Products Corporation, the claims of defendant for storage by plaintiff of certain merchandise at 709-23rd Street, Paterson, and defendant's claim with respect to certain reflection yokes and other evidence which is relevant and material to the end that it may be determined what amount, if any, may be due and owing from one party to the other as to all dealings between the parties.
7. In reaching said determination, among other things, the arbitrators shall:
A. make an interpretation of the contract between the parties with respect to the share of profits, if any of T V to be paid to Anco, and particularly with respect to whether profit and loss months should be offset in determining the share to be paid to Anco, or whether Anco would be entitled to a share of the profits in the profits months, disregarding any loss months involved;
B. determine the amount due to either party for the entire three year period beginning February 1, 1950, and ending January 31, 1953.
(1) In measuring the amount due either party for the part of said three year period following March 31, 1952, the arbitrators will calculate the same upon the basis of the average monthly profit or loss months of the preceding period as will in their opinion and under all the circumstances provide reasonable satisfaction for the amount to be paid plaintiff or offset by defendant.
C. direct that an inventory be made by the parties of defendant's business on April 30, 1952, and at which taking, both parties or their representatives shall be present, and which inventory of defendant's business shall be considered by the arbitrators in fixing their award to be paid or ascertained under the provisions of the contract together with an audit which plaintiff may, if it chooses, require of the books and records of the defendants for the entire period from January 30, 1950, to date of arbitration at plaintiff's expense."
*121 It is conceded that hearings consuming five days were held before the arbitrators and the pertinent part of the majority report is as follows:
"5. Under the terms of said order, in our determination we made an interpretation as provided in said order concerning the issues submitted to us.
In connection with that issue, we determine that Anco is entitled to receive monthly payments in those months where profit resulted, without regard to loss months, and that such profit months were not to be offset by loss months.
In connection with this issue, paragraph 7-C of the order relating to inventory and examination of the books and records of the defendant were complied with.
6. In connection with the second issue, our determination is that the amount due to Anco for the entire three year period, beginning February 1, 1950 and ending January 31, 1953, is the sum of $6,478.26.
Our calculation results from the following:

 (a) Due Anco for profit months during
 period 2/1/50  4/30/52 $11,429.14
 (b) Due Anco as prospective profits from
 5/1/52 to 1/31/53 3,809.71
 (c) Due Anco on credits given to T V
 customers 1,091.90
 ___________
 Total 16,330.75
 CREDITS
 (d) Received by Anco to date from T V $5,075.17
 (e) Due T V on Rent Claim-Storage Charge 3,060.83
 (f) Net yoke charge  1500 yokes 1,620.00
 (g) Debit Memo and Invoices paid on
 behalf of Anco 96.49
 ___________
 Total credits due T V 9,852.49
 Award 6,478.26

We do hereby find and award, after consideration of all claims that there is a net sum due to Anco in the amount of $16,330.75, representing percentage of profits and credits under the terms of the contract less credit for sums paid on account, less credits to which T V is entitled leaving a final net balance due to Anco of $6,478.26.
In making the above determination we have considered the question raised by T V regarding the $25,000.00 advance under the contract.
We concluded, relying on the cases of Roofing Sales Co. v. Rose, 103 N.J.L. pge. 553; and Pargman v. Maguth, 2 N.J. Super. 33; that the advance was money paid to Anco before the time of payment *122 and was intended to look forward to the time when the money was to be due to Anco, and no liability to return any part of it existed, either expressly or impliedly under the contract. Accordingly, it is treated as a payment on account with no obligation to be returned.
The above is a report of the arbitrators, Abraham Kraditor and Morris Oppenheim, to which the third arbitrator, Oscar R. Wilensky, does not agree and there follows, after our signatures, his individual report.
 Abraham Kraditor
 Morris Oppenheim"
The minority award need not be set forth except to say it determined "that net profits were to be calculated over a 3 year period and that loss months should be offset against profit months in determining the share of the profits to be paid to the plaintiff," and that the entire $25,000 advance payment should have been credited against any liabilities of the defendant.
The court then, on June 20, 1952, confirmed the majority report and award, denied defendant's counter-motion to modify the award, and entered judgment for the plaintiff and against the defendant in the sum of $6,478.26 with costs to be taxed.
Defendant appeals from such order and judgment. Defendant's argument is based upon a theory that the award as confirmed is illegal because it is based upon a mistaken legal principle.
Defendant argues mainly: (1) that in deciding the matter of the $25,000 advance payment, the arbitrators intended to rely on the legal principles involved in Roofing Sales Co. v. Rose, 103 N.J.L. 553 (Sup. Ct. 1927), and Pargman v. Maguth, 2 N.J. Super. 33 (App. Div. 1949), and that they applied the principles incorrectly, and (2) that they intended to rely on legal principles in deciding the question of whether the net profits should have been calculated over the three-year period or on the profit month basis, and that such principles were also erroneously applied.
The latter ground (2) has no merit, since nothing at all appears on the face of the award which would indicate that *123 the arbitrators intended to decide that issue according to legal principles.
Arbitration, if it is to be useful, must rest upon a certain philosophy for the settling of disputes. The parties when accepting arbitration name their own judges, frame the issues to be determined and bind themselves to accept the award, and can only set aside or modify the award by showing a violation of the pertinent statutes.
R.S. 2A:24-8 sets forth the circumstances under which such an award can be vacated:
"The court shall vacate the award in any of the following cases:
"a. Where the award was procured by corruption, fraud or undue means;
"b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
"c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
"d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
"When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."
There is no contention as to dishonesty nor any claim of misconduct, fraud or corruption on the part of the arbitrators. So we must conclude that the dissatisfied parties must contend that the award was procured by undue means.
In Leslie v. Leslie, 50 N.J. Eq. 103, 107 (Ch. 1892), the court in discussing the peculiar benefits and limitations accruing to the parties in arbitration matters said:
"* * * The submission is the commission of the arbitrator. By force of it he becomes a judge, with absolute power over the things submitted to his judgment. So long as he acts uprightly and impartially, and keeps within the limits of his authority, and deprives neither party of a full and fair hearing, his judgments are unimpeachable and irreversible. He may do what no other judge has a right to do; he may intentionally decide contrary to law, and still have his judgment stand."
*124 In Held v. Comfort Bus Line, Inc., 136 N.J.L. 640, 641 (Sup. 1948), Mr. Justice Heher recently stated the rule which we think is applicable here:
"The report or award is impeachable by the express terms of the statute if procured `by corruption or other undue means,' R.S. 2:40-2, 2:40-3, N.J.S.A.; and it is conceded that the award here is not assailable upon any ground falling within that category, and that there is no valid reason for denying confirmation. The phrase `undue means' comprehends two other distinct classes of cases  i.e. (1) where the arbitrator meant to decide according to law, and clearly had mistaken the legal rule, and the mistake appears on the face of the award or by the statement of the arbitrator; and (2) where the arbitrator has mistaken a fact, and the mistake is apparent on the face of the award itself, or is admitted by the arbitrator himself. Bell v. Price, 22 N.J.L. 578, 579, 590; Taylor v. Sayre and Peterson, 24 N.J.L. 647; Leslie v. Leslie, 50 N.J. Eq. 103. Ordinarily, a mistake or error of law or fact is not fatal unless there is a resulting failure of intent or the error is so gross as to suggest fraud or misconduct. Every intendment is indulged in favor of the award; and it is subject to impeachment only in a clear case. In the absence of misconduct or want of good faith on the part of the arbitrator the mere fact that the award seems excessive or inadequate is not sufficient to warrant judicial interference. Hewitt v. Lehigh & Hudson River Railroad Co., 57 N.J. Eq. 511; West Jersey Railroad Co. v. Thomas, 23 N.J. Eq. 431."
Applying these rules to the facts here, we do not think that the award was arrived at by undue means. A consideration of the award does not clearly show that the arbitrators intended or did decide the matter on legal grounds.
Defendant has the burden of clearly establishing that the majority award of the arbitrators is violative of the statute. Being fully cognizant of the proposition that every intendment is to be indulged in favor of the award, we feel that he has not satisfied this burden. The mere fact that the arbitrators, in treating the advance payment of $25,000 as payment on account without liability to return it, referred to two New Jersey cases cannot be construed so as to invalidate the whole award or justify its modification.
Assuming arguendo that the arbitrators intended to decide on the basis of the legal rule enounced in the Rose and *125 Maguth cases, supra, have they committed an error of law in applying that rule to the facts of this transaction? We think not.
The arbitrators in citing the two cases concluded that the $25,000 was an advance payment and that under the contract there was no liability to return the sum. This proposition is the ratio decidendi of those cases. The question of applying the advance payment as a credit against a liability was not raised in either the Rose or Maguth cases. Therefore, after concluding that there was no obligation to return the $25,000 advance payment, the arbitrators then had to decide against what liabilities the advance payments should be credited. They could not have relied on Rose and Maguth in deciding this, since that issue was not involved in those cases, and formed no basis for their decision. The arbitrators, after due consideration concluded that under the terms of the contracts, only the sum of $10,159.24 (which represents ten percent of the net profits in profit months) should be credited against the liability of the defendant. Since there is no evidence of any undue means, fraud or corruption, this award will not be disturbed.
Defendant by its contract saw fit to provide for arbitration in the event of a dispute arising with the plaintiff. It sought and obtained arbitrators. The arbitrators were named in accordance with the provision of the agreement. It appeared before the arbitrators, submitted its proof but now it is dissatisfied with the majority report and award.
It is fundamental that any such award will not lightly be set aside unless the dissatisfied party clearly establishes that the arbitrators indulged in any of the specified grounds of the statute that justify the vacating of the award. Deakman v. The Odd Fellows Hall Assn., 110 N.J.L. 304 (E. & A. 1932). We fail to find that the defendant has established any proof of such grounds that would cause us to vacate the award.
Affirmed.