52 N.J. Super. 399 (1958)
145 A.2d 659
ALEXANDER SUMMER AND EDITH SUMMER, TRADING AS ALEXANDER SUMMER CO., PLAINTIFFS-APPELLANTS,
v.
JOHN E. FABREGAS, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1958.
Decided October 31, 1958.
*401 Before Judges PRICE, SCHETTINO and HALL.
Mr. Aaron Lasser argued the cause for plaintiffs-appellants (Messrs. Lasser & Lasser, attorneys; Mr. Lee Sarokin, on the brief).
Mr. Arthur L. Troast argued the cause for defendant-respondent (Messrs. McCarter & English, attorneys; Mr. Ward J. Herbert, of counsel).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Plaintiffs appeal from a judgment based upon a jury's verdict of no cause of action, from a denial of plaintiffs' motion for judgment at the end of the case, and from a denial of plaintiffs' motion for a new trial.
This is a contract action whereby plaintiffs seek recovery for certain loans and other moneys advanced by plaintiffs to defendant totalling $4,232.
Plaintiffs, licensed real estate brokers, by a written contract dated November 15, 1955 employed defendant as a real estate and industrial engineering and building service salesman for a term of one year with compensation to be only in the form of commissions. The most pertinent provisions of the agreement for the purposes of this case are paragraphs 4 and 12 which are as follows:
"4. That it shall be the duty of the Employer to instruct the Employee in that branch of the business of the Employer in which *402 the Employee is employed by the terms of this agreement and to give the Employee the benefit of his experience and trade data acquired in the conduct of such business."

* * * * * * * *
"12. That the right to share in such commissions by the Employee shall not accrue until the commission has actually been collected by the Employer, but the Employer may, in his discretion, grant to the Employee such advances on account of such commission as he may from time to time deem fit and reasonable. It is understood and agreed, however, that such advances are not to be deemed as part payment of uncollected commissions nor as salary or other compensation, but are to be regarded strictly as temporary loans for the accommodation of the Employee. If, at the termination of this agreement or of the employment thereunder, or if at any other time, the advances so made to the Employee shall exceed the credits to his account for his share of commissions collected, then such excess of advances, overdraft or debit balance in the account of the Employee shall be owing by the latter and be payable upon demand to the Employer hereunder. Upon the receipt of payment of a commission by the Employer, it shall thereupon credit the account of the Employee with the portion of said commission due the Employee under the terms of this agreement."
At the time the contract was entered into plaintiffs also delivered to defendant a letter stating that:
"* * * you will * * * devote your activities to the handling of industrial properties and sale of Alexander Summer Industrial Service Company services. You will receive $150 per week for a period of six months, which will be a loan against commissions. Prior to the end of the six month period, your activities will be reevaluated and a determination made as to its continuance * * *."
Parenthetically, it should be observed also that the industrial service company referred to was discontinued during the six-month period.
Plaintiffs' only witness gave testimony to establish that they had given defendant $150 per week from November 17, 1955 through May 22, 1956; that defendant received 28 such payments totalling $4,200; that plaintiffs had paid for defendant's benefit several small charges amounting to $32; that the $150 payments were loans; that each payment was made by check containing the word "loan" on its face; that defendant personally accepted and endorsed each *403 check; that each month a statement indicating that the payments were "loans" was submitted to defendant and acknowledged by defendant to be correct; that plaintiffs agreed to credit against the loans commissions earned by defendant but there was none earned, and that these payments were made in accordance with the provisions of paragraph 12 and had not been repaid.
We note that paragraph 12 contains an express provision for repayment of these moneys in any event. This provision takes the case out of the general rule that an employee who receives advances on account of future commissions is not required to repay any excess of the advances over the amount of commissions earned in the absence of express agreement to repay. Roofing Sales Co. v. Rose, 103 N.J.L. 553, 557 (Sup. Ct. 1927); 57 A.L.R. 33; 165 A.L.R. 1367.
Defendant admitted that he received a total of $4,200 at the rate of $150 per week for approximately six months, as well as $32 for incidental moneys paid out by plaintiffs for defendant's benefit. He contended that $3,932 of the total were "loans" representing advances, but that $300 representing the two last weeks' payments were not loans but outright grants. Defendant argued that he was not required to repay the $3,932 because plaintiffs refused and failed to perform their contractual obligations to him, especially those duties set forth in paragraph 4, and that such refusal or failure amounted to a material breach of the agreement excusing repayment on his part and barring recovery by plaintiffs. He particularized these breaches as consisting of (a) plaintiffs' failure and refusal, after numerous demands by defendant, at any time to instruct defendant as a real estate and industrial engineering and building service salesman, and (b) plaintiffs' neglect or refusal to give defendant the benefit of plaintiffs' experience and trade data acquired in the conduct of plaintiffs' business. In other words, he contended he did not get what he bargained for and as a result he was prevented from earning commissions from which the loans would have been satisfied.
*404 Defendant had been engaged in the engineering and construction fields for 11 years. He knew nothing about the real estate business. He testified that one of the plaintiffs and their agent, during preliminary discussions, told defendant that he could be of assistance to plaintiffs in selling and developing industrial parks and properties because of his engineering background.
Defendant testified that he reported for work to begin his training at plaintiffs' Newark office on November 15, 1955 and was there given a booklet to prepare for a real estate broker's examination which he ultimately passed. He complained to plaintiffs that plaintiffs did not supply him with up-to-date data on property listings, which data could be used by him to obtain leads for business which would ultimately produce commissions for defendant. He also testified that he continually complained to plaintiffs, that he advised plaintiffs that he was dissatisfied with plaintiffs' failure to instruct him and their lack of interest in him, and that, as a result, he was finally shifted to plaintiffs' Teaneck office where plaintiffs promised to give him the guidance and instructions referred to in paragraph 4 of the agreement.
Defendant further testified that plaintiffs' treatment of him while he was in Teaneck was substantially similar to that which he had received while in Newark, and that in Teaneck he received no instructions from plaintiffs' experienced salesmen, although on isolated occasions he was allowed to be present at business conferences. He said he continued to complain regularly and, further, that he received very few leads or directions which might possibly lead to commissions for him; and that therefore he was not instructed in that branch of the employer's business in which he was employed, as required by the agreement.
Defendant testified that he remained at the Teaneck office for four months and then, when no improvement developed in plaintiffs' relationship with him, told plaintiffs he was dissatisfied and left plaintiffs' employment. Defendant further testified that his work or efforts were never criticized *405 and that Mr. Summer personally had sought to induce him to stay on by telling him that the loans for the last two weeks did not have to be repaid.
Plaintiffs offered no evidence to rebut defendant's testimony but sought to establish only through cross-examination of defendant that he interfered with his own acquisition of knowledge by lack of cooperation and incentive, and that they had not actually breached the contract as defendant claimed. They contended that, even assuming they had breached the agreement, defendant was entitled only to a set-off to the extent he was damaged by the breaches; that since he offered no proof of damages, he was entitled to no set-off; and, finally, that since he charged plaintiffs with a continuous breaching of the agreement for the six months' period, defendant's acceptance each week of a payment of $150 constituted a waiver of all prior breaches.
Plaintiffs principally seek reversal on the basis, as their counsel expressly stated at oral argument, that the promises set forth in the agreement are independent as a matter of law and that, therefore, they were entitled on their motion at the end of the case to the direction of a judgment for the loans advanced under paragraph 12 in the amount of $4,232. They also claim that, irrespective of the independency of the promises or any breach thereof by them, defendant should have been held as a matter of law to have waived plaintiffs' performance by continually accepting the weekly $150 loans after each alleged breach, and so their motion for judgment should have been granted on that ground as well.
The trial court, in denying the motion, held that the respective promises were dependent, and not independent, as a matter of law, and that the question of waiver by defendant was one of fact and not of law. He put the case to the jury on this theory, stating that it was for it to determine whether plaintiffs had materially breached their promise to instruct and whether defendant had waived any breach by continually accepting the weekly loans. Plaintiffs' only objection to the charge was as to its binding instruction that the promises were dependent. They did not then, or *406 now, otherwise object to its accuracy or sufficiency and so no question with respect to any other phase of it is before us. They concede that, if the promises are dependent, the matter of any breach by them was a jury question.
Plaintiffs' motion for a new trial again raised only the same questions as had been urged as the bases for their motion for judgment and their single ground of objection to the charge. Their notice of motion for a new trial did not specify among the grounds therefor that the verdict was contrary to the weight of evidence as being the result of partiality, prejudice and passion, although they argue such a contention in their brief to us. Despite the fact that it was not raised below, we may say our examination of the record indicates to us clearly that the verdict was amply supported by the evidence and that there would have been no sufficient basis under applicable rule and decisional law for the trial court to have set it aside on that ground, even if the point had been urged to it.
The first problem we discuss is whether the promises are independent or mutually dependent. At oral argument both attorneys conceded that the determination of this issue was for the court and not for the jury.
Plaintiffs in paragraph 4 agreed and promised to instruct and assist defendant in the real estate business. Defendant by paragraph 12 agreed and promised to repay to plaintiffs the weekly loans advanced to him. By this agreement the contracting parties gave no express indication of their intentions regarding independency or dependency of the promises. But, the law favors a finding of dependency. In Joseph Lande & Son, Inc., v. Wellsco Realty, Inc., 131 N.J.L. 191, 197 (E. & A. 1943), Mr. Justice Heher stated:
"The question of dependency of covenants is in the ultimate analysis one of construction and intention; and, in the absence of a clear indication of a contrary understanding, the tendency of the modern decisions is to consider reciprocal promises as mutually dependent."
This opinion is consistent with the modern concept that in bilateral contracts promises are consideration one for the *407 other, and the performance of each promise is exchanged, one for the other.
In Giumarra v. Harrington Heights, Inc., 33 N.J. Super. 178, 191 (App. Div. 1954), affirmed on opinion below, 18 N.J. 548 (1955), we said:
"* * * As Williston observes:
`* * * if the intention of the parties is to be brought into the doctrine of conditions which are in truth constructive, it can only be an intention which the court assumes the parties would have had if they had considered the matter, and had made some provision regarding it. The only justification for such an assumption is the fairness of dependency, as compared with independency, of promises in bilateral contracts, * * *.' (§ 825, pp. 2312-2313)
The doctrine of constructive dependency of promises should therefore be rested solely on their fairness, and not on any intention of the parties where they express none. If promises are to be determined as mutually dependent and enforced as such, it should be because of the inherent justice of the situation and not the unexpressed intention of the parties."
In Steelman v. Camden Trust Co., 22 N.J. Misc. 384, 387 (Sup. Ct. 1944) (not officially reported), Judge Burling stated:
"In case of doubt covenants will generally be construed as dependent rather than as independent, since such a construction ordinarily prevents one party from having the benefit of the contract without performance of his own obligations. 17 C.J.S. Contracts, § 344, p. 799."
See 12 Am. Jur., Contracts, p. 850, § 298; Corbin, "Conditions in the Law of Contracts," 28 Yale L.J. 739 (1919), reprinted in Selected Readings on the Law of Contracts (1931), p. 871; and also criticism of Britton v. Turner, 6 N.H. 481, 26 Am. Dec. 713 (Sup. Ct. 1834), by Professor Clarence D. Ashley in 24 Yale L.J. 544 (1915) and especially footnote material at pages 551-552. Here we are convinced beyond any doubt that under all the circumstances previously outlined, and especially from the fact that defendant knew nothing about the real estate business and really bargained for plaintiffs' instruction therein, inherent justice *408 and fairness dictate that the promises should be held dependent.
Reference may be made also to an additional admitted fact. The lengthy and comprehensive agreement of November 15, 1955 was drafted by plaintiffs and submitted to defendant. No specific provision is set forth as to whether the promises are dependent or independent. Absent any expressed intent, the writing may be construed most strongly against the draftsman. Terminal Construction Corp. v. Bergen County, etc., Dist. Authority, 18 N.J. 294, 302 (1955); Fletcher v. Interstate Chemical Co., 94 N.J.L. 332 (Sup. Ct. 1920), affirmed on opinion below, 95 N.J.L. 543 (E. & A. 1921).
We conclude as a matter of law that defendant's promise to repay the loans pursuant to paragraph 12 was dependent upon plaintiffs' promise to instruct and to assist defendant as set forth in paragraph 4. Without such instructions and assistance, defendant could not learn to make sales. Without sales, defendant could not earn any commission with which he would perform his promise to plaintiffs to repay the loans. Under the doctrines of assumption of constructive dependency of promises, of inherent justice and of construction of writing against the draftsman, we hold the promises in this writing to be mutually dependent.
We discuss next the issue of plaintiffs' alleged breach of paragraph 4 of the agreement. The trial court charged in effect that, if the jury were to find that the plaintiffs' breach was one which goes to the essence of the agreement, or was vital to the continued existence of the agreement and to the duty to perform on the part of defendant, then such a breach by plaintiffs would operate as a discharge of the defendant. No objection was made to the trial court's charge with reference to such claimed breach. Since the propriety of the charge was not raised, we do not consider it on this appeal.
We next consider the issue of waiver, which was neither pleaded nor referred to in the pretrial order. Our examination of the record reveals that this issue was considered *409 and discussed by trial counsel and the court. R.R. 4:15-2 in part provides:
"When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order. Such amendment of the pleadings and pretrial order as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend shall not affect the result of the trial of these issues."
See also Heagen v. Borough of Allendale, 42 N.J. Super. 472, 480 (App. Div. 1956); Schnitzer & Wildstein, N.J. Rules Serv., A-IV-386. We therefore hold that waiver was an issue.
In West Jersey Title and Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 152-153 (1958), Mr. Justice Heher stated:
"* * * `Waiver' is the intentional relinquishment of a known right. It is a voluntary act, `and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on.' George F. Malcolm, Inc., v. Burlington City Loan and Trust Co., 115 N.J. Eq. 227 (Ch. 1934). It is requisite to waiver of a legal right that there be `a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part'; `A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition.' Aron v. Rialto Realty Co., 100 N.J. Eq. 513 (Ch. 1927), affirmed 102 N.J. Eq. 331 (E. & A. 1928). `Waiver' presupposes a full knowledge of the right and an intentional surrender; * * *."
Plaintiffs contend that even if they breached their agreement, defendant waived the continued breaches by his weekly acceptances of the $150 payments and, since defendant thus waived his right to enforce plaintiffs' promises, defendant could not use plaintiffs' breaches as a defense to this action. Van Dusen Aircraft Supplies, Inc., v. Terminal Construction Corp., 3 N.J. 321, 326 (1949). Plaintiffs, as hereinbefore noted, additionally argue that the court *410 should have decided this issue as a matter of law. However, we note that defendant testified that he periodically complained to plaintiffs about their lack of instructions and assistance to him. These conflicting factual positions made the issue of waiver obviously one for the jury. No objection was made to the charge thereon.
We hold the trial court was correct in denying the motions for judgment and for a new trial.
Affirmed.