67 N.J. Super. 68 (1961)
169 A.2d 838
JOSEPH TOKER, INC., A NEW JERSEY CORPORATION, ASSIGNEE OF CITIES SERVICE OIL COMPANY, INC., A PENNSYLVANIA CORPORATION, PLAINTIFF-APPELLANT,
v.
JACK COHEN, A/K/A ISADORE COHEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1961.
Decided April 13, 1961.
*71 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Phidias L. Pollis argued the cause for plaintiff-appellant (Messrs. Pollis, Williams & Pappas, attorneys).
Mr. Nathan Reibel argued the cause for defendant-respondent (Messrs. Reibel, Isaac & Tannenbaum, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff, Joseph Toker, Inc., appeals from a judgment of the Union County District Court, insofar as said judgment denied it the sum of $794.29, consisting of allegedly overpaid commissions to defendant, a former employee.
Plaintiff is a wholly owned subsidiary of Cities Service Oil Co., Inc., and is engaged in the fuel oil distribution business in Elizabeth, N.J. Defendant Cohen had been Toker's general manager from the time of its formation, in 1951, until September 1959. His starting salary, in 1951, under an oral arrangement documented only by notations on Toker's employment records, was fixed at "$120 wk. + 5% of op. income" before federal taxes.
In April 1957, while continuing at his post in the Toker office, Cohen was placed on the Cities Service payroll, in order that he might become eligible for the parent company's fringe benefits. His monthly salary was at this time raised to $750 plus the now standard 5% of net profits. Periodic increases elevated the base monthly figure to $840 at the time of his separation from plaintiff's employ.
*72 The testimony indicates that in the early years of his association with Toker, Cohen would receive his percentage "commissions" on a month-to-month basis, but that during the last several years of his employment he had been paid his monthly salary plus a fixed monthly "draw" or "advance" against anticipated annual net profits. In 1959 these "advances" were in the amount of $500 per month. Under circumstances which are in sharp dispute in the record, Cohen, on September 14, 1959, gave notice of intention to depart from plaintiff's employ effective the end of the month. Defendant contends he actually left on September 18, 1959, although plaintiff asserts that he was dismissed on that date. In view of the holding below on the legal issues, and our conclusions thereon, the date of severance of employment is not material.
By September 15, 1959 defendant had received, for the year, 8 1/2 months' advances, totalling $4,250. After his departure plaintiff, in computing its income records, discovered that his 5% arrangement entitled defendant to only $3,474.16 in "commissions" for 1959, as of September 15, 1959. Suit was thereupon instituted for return of the difference, as well as for alleged excess car rental advances made to Cohen.
The trial judge determined that defendant was liable for the car rental advances in the sum of $111.45 but declined to permit recovery of the assertedly overpaid advances, on the ground that these sums "constituted part of the remuneration which Mr. Cohen became entitled to receive * * * and retain." The court considered the latter determination to be dictated by the rule of Roofing Sales Co. v. Rose, 103 N.J.L. 553 (Sup. Ct. 1927). In Rose, defendant, a salesman, was paid by plaintiff at the rate of $40 per week out of a drawing account, to be charged against commissions earned by him. Because the amount of his weekly draw was suddenly reduced by plaintiff, defendant left the latter's employ. At the time of his departure, his drawing account exceeded his commissions earned by the sum of $319.40. *73 The former Supreme Court upheld the dismissal of plaintiff's suit for the alleged overpayment, adopting the principle that in the absence of special agreement to the contrary, an agent who receives advances on account of commissions cannot be held personally liable for those advances in the event that his employment has ceased and the commissions earned by him do not equal the advances. The holding in Rose was followed in Veteran Realty Co. v. Marks, 9 N.J. Misc. 1207 (Sup. Ct. 1931), affirmed opinion below, 110 N.J.L. 554 (E. & A. 1933), and was restated in Summer v. Fabregas, 52 N.J. Super. 399, 403 (App. Div. 1958), wherein the exception to the rule became operative by virtue of an express contractual provision for repayment of advances.
Plaintiff urges that the instant case is distinguishable from the Rose line of holdings for several reasons. First, it is said, defendant was not a salesman but an executive, and he was not employed on a commission basis; rather, he was paid a regular salary plus a monthly draw, as adjusted and computed at the end of the year, in anticipation of his share of 5% of the net income. Thus, plaintiff argues, Cohen's drawing account constituted neither a minimum salary nor a payment in lieu of salary for work to be performed in the future. In short, Cohen was not being advanced funds against which the fruits of his own endeavors  "commissions"  were to be offset.
We recognize the factual difference between plaintiff's arrangement with Cohen and the status of the ordinary commission salesman. The resultant legal consequences are in our view the same, however, especially in light of the mechanics of defendant's compensation agreement as contained in the record before us. The evidence indicates quite lucidly that defendant was receiving a fixed salary and a fixed minimum draw, the latter sum in lieu of additional salary and deductible from the incentive feature of his contract  the 5% of net income arrangement. J. Richard Lynk, office manager of Toker, who computed Cohen's compensation *74 during the years 1955-59, testified that "Mr. Cohen was paid the total amount of $1,340 per month for the months of January to August inclusive, 1959. These payments represented $840 salary and $500 draw against 5% commission on the company profit." (Emphasis added)
It therefore appears that defendant was compensated by plaintiff in the form of two fixed monthly payments, one of which would be taken into account in determining, at year's end, whether he was entitled to additional sums as his share of the company's profits. Construing the arrangement thusly, it becomes immaterial to the present problem that plaintiff had, in the past, made year-end commission adjustments. It is to be noted, however, that all of these adjustments were favorable to Cohen; he had never been requested to return any part of his advances.
Having concluded that Cohen's compensation, with respect to the $500 monthly sum, was indeed an advance in lieu of salary, the sole remaining question is whether the employer had a right to repayment of those advances by virtue of the fact that they were to be set off against a stated percentage of net income rather than against commissions earned.
The principle first enunciated in this state in Roofing Sales Co. v. Rose, supra, is firmly established in our jurisprudence. See Annotations, 57 A.L.R. 33 (1928); 165 A.L.R. 1367 (1946). It is premised, first of all, upon the unspoken assumption that the superior bargaining power of the employer vis-a-vis his agents warrants imposing upon him the duty of making explicit his rights under an employment agreement  especially where he demands the return of previously transferred funds. Secondly, there is the settled judicial reluctance to cause a "forfeiture" of property already received unless it convincingly appears that such a result was intended by the parties. The rule, articulated in terms of contractual intent, is thus one of implication or presumption, properly placing the burden of overcoming it upon the party seeking repayment. In the absence of express stipulation *75 or convincing circumstances indicating a contrary arrangement, advances to an employee will be presumed to constitute payments in lieu of salary and to fix the employee's minimum compensation. Stating the rule conversely, an implication of obligation on the part of the employee to repay advances will not be drawn unless the contract or the surrounding circumstances demand such an inference. See 56 C.J.S., Master and Servant, § 120, pp. 561-563; 2 Am. Jur., Agency, § 290, p. 229.
We are not impressed by plaintiff's contention that this doctrine applies only in the case of commission salesmen and not where, as here, the advances are set off against the net profits of the business rather than against earmarked income brought in directly by the particular employee. Under the facts outlined above, Cohen received a fixed monthly sum. Whether it represented an advance against his share of company profits in a firm in which he held a high executive position, or whether it was to be set off against his share of personal sales income in a business in which he was employed as a drummer, is not determinative. It is fairly to be implied that the parties regarded the net earnings of the Toker company as attributable in substantial degree to defendant's managerial skill. Therefore he was earning his stipulated share of profits under the same type of incentive arrangement, although in a different manner, as a salesman earns commissions on the sales he effects. The failure of the employer to rebut the implication that the employee's retention of his advances is not contingent upon subsequent happenings remains a significant factor.
The irrelevance of the exact nature of the employee's status in the employer's organization, in relation to the problem confronting us, may be gleaned from the pertinent decisional law. In Educational Films Corp. of America v. International Film Serv. Co., 129 Misc. 370, 221 N.Y.S. 330, 331 (Sup. Ct. 1927), defendant, a motion picture producer, entered into an agreement with plaintiff, a distributor, that the net profits from the sale of films produced *76 by defendant and distributed by plaintiff would be divided between them. Plaintiff further consented to advance to defendant against the latter's share of the net profits a weekly sum, and defendant in turn authorized plaintiff to retain the profits until reimbursed for the advances. In a suit by plaintiff for the excess of advances over defendant's share of the profits, the court, in holding that defendant was not liable, characterized the case as
"* * * no different than the arrangement between a salesman and his employer, whereby the latter advances sums to the former to be charged against commissions earned. * * * [In the salesman cases,] as in the case at bar, there appeared the absence of any agreement creating a personal liability to repay the `advances.' if the earnings of the party sought to be charged were insufficient to satisfy the claim."
Southern Molasses Co. v. Boutcher, 172 La. 691, 135 So. 27, 28 (Sup. Ct. 1931), involved an employer's suit against its former assistant manager for alleged overpayments. Defendant had been "allowed" a drawing account of $300 per month and was to "receive" one-third of the company's profits, with the understanding that the amounts drawn should be deducted from his share of the profits. The employer's action was occasioned by the absence of profits against which the drawings could be set off. The court held that defendant was not obligated to return any portion of the sums received from his drawing account, stating in part that "it is clear that this allowance was a salary, for plaintiff could receive one-third the profits only if profits were made, and again the drawing could be deducted from the profits only if profits were made."
In Carter v. Bradlee, 245 App. Div. 49, 280 N.Y.S. 368, 372 (App. Div. 1935), affirmed 269 N.Y. 664, 200 N.E. 48 (Ct. App. 1936), the employee was a manager of one of the subdivisions of defendant's Import Department. His compensation took the form of a base drawing account plus a percentage of net profits to the extent that that percentage exceeded his drawing. He also agreed, however, to share *77 in the losses of his department, and a certain portion of his share of the profits was to be withheld and maintained as a credit balance. In a breach of contract suit by the employee, defendant counterclaimed on the theory that plaintiff owed the company  after absorption of his credit balance  over $16,000 on the basis of his participation in the losses of his department. It was held that plaintiff was not so indebted and that the parties' arrangement, under the circumstances, "was similar to that between an ordinary salesman and employer where, if nothing to the contrary is specified, advances to the salesman are absolute and when his commissions as earned do not entitle him to the full sums advanced, there may be no recovery by the employer of the difference." Also see Anagnosti v. Almy, 252 Mass. 492, 147 N.E. 854 (Sup. Jud. Ct. 1925); Valdosta Roofing and Supply Co. v. Lawrence, 89 Ga. App. 168, 79 S.E.2d 10 (Ct. App. 1953); 56 C.J.S., supra, § 95, p. 525.
New Jersey law is not entirely silent on this point, either. Pargman v. Maguth, 2 N.J. Super. 33 (App. Div. 1949), held, citing Roofing Sales Co. v. Rose, supra, that where a patent license agreement provided that the licensor would be advanced quarterly sums by the licensee, such advances "to be charged against such royalties as will accrue to the Licensor during the period of accounting in which the advance was made," the advances were intended as minimum royalty benefits to the licensor and had to be paid whether or not actual royalties had accrued. Cf. Anco Products Corp. v. T V Products Corp., 23 N.J. Super. 116, 124-25 (App. Div. 1952), where the court, in a dictum, approved an arbitration conclusion to the effect that the Rose and Pargman cases were controlling on the lack of duty of a technical production consultant to return sums advanced to him which were to be set off against his share of his employer's net profits.
We thus conclude that the advances made to Cohen by plaintiff were a guarantee in lieu of an equivalent portion of the share of net profits to which he was entitled, and *78 were, in any event, contemplated by the parties to fix the minimum paid him. He was therefore under no obligation to return any part of these advances.
Plaintiff maintains that an essential feature of the reasoning in Roofing Sales Co. v. Rose, supra, was the court's finding that the employer had breached the contract of employment and thereby prevented the agent from earning commissions sufficient to equal his advances, and it urges that no such breach here occurred, as defendant voluntarily left the plaintiff's employ. The finding therein, however, (103 N.J.L., supra, at p. 559) was clearly an alternative ground of decision and in no way a necessary element of the primary holding construing the parties' agreement.
Separate and apart from the foregoing, there is Cohen's own testimony, uncontroverted in the record before us, that he had discussed with Mark E. Powley, Toker's vice-president, the possibility of his advances exceeding, at some time, 5% of the net income for that year. He had asked Powley, "What would be the outcome if I was overdrawn," and the company official had replied, "You are not in the class of a salesman. * * * Naturally we would write it off."
Plaintiff has sought to apprise the court, in its reply brief, that Mr. Powley, in rebuttal testimony, denied such a conversation with Cohen. However, no such denial is contained in the trial judge's settled state of case, prepared in accordance with R.R. 1:6-3 by the court following its recognition of "the irreconcilable disparity between the appellant's statement of evidence and proceedings and the respondent's counterstatement." Subject to proceedings to correct or modify the record, R.R. 1:6-6, which, in the light of plaintiff's obvious knowledge of the alleged omission far in advance of completion of the appellate record, have not here been timely instituted, Gross v. Grimaldi, 64 N.J. Super. 457, 465 (App. Div. 1960), the record as settled by the trial court is conclusive and exclusive. Yoerg v. Northern New Jersey Mtg. Associates, 44 N.J. Super. 286, 289 (App. Div. 1957). Thus, the decision below is also sustainable *79 on the express agreement against any right of recovery of drawings advanced.
Reversible error is charged in the trial court's exclusion of testimony proffered by plaintiff in an effort to demonstrate Cohen's unfaithfulness as an employee. No charge of unfaithfulness was contained in the pleadings. But during the initial hearing of this matter on March 16, 1960, plaintiff sought to cross-examine defendant concerning a corporation he had formed at about the time he left plaintiff together with other of Toker's employees. Objection was sustained on the ground this was irrelevant to the matter in suit. At the conclusion of the testimony that day, the court expressed the tentative opinion that the case seemed to be controlled by Roofing Sales Co. v. Rose, supra, but instructed plaintiff's counsel to file a letter memorandum and granted plaintiff leave to consolidate this action with one previously instituted in the Superior Court, Chancery Division, by plaintiff against defendant for alleged pirating of customers. The consolidation was not effected, but the court, after considering additional briefs submitted by the parties, suggested on its own motion  on May 4, 1960  that the case be resumed and plaintiff permitted to reopen its proofs and amend its complaint to show that Cohen was an unfaithful servant, which showing, in the court's view, might "defeat his claim to the remuneration received and his right to retain it." An objection by defendant that this would improperly enlarge the issues on which the action was brought was overruled.
The trial resumed on June 15, 1960. Plaintiff attempted to offer evidence to the effect that defendant, while in Toker's employ, had plotted to establish a business of his own, and to take with him most of Toker's administrative staff. Proofs were introduced to show that a dinner had been held at the Newarker Restaurant less than a week before Cohen's departure, at which the proposed new corporation was discussed, and that the $100 expended on the dinner was charged to Toker; and that Cohen had, shortly before his *80 separation from plaintiff's employ, sold a Toker truck to one Mortimer Glasofer for $1,500, had on September 17, 1959 formed a rival corporation together with three other former Toker employees, and, through the new corporation, had repurchased the same truck from Glasofer for the identical sum, $1,500. The trial judge refused to admit so much of this evidence as was sought to be adduced through the testimony of the three former Toker employees, defendant's accountant, and Glasofer  on the ground that the names of these witnesses had not been revealed in plaintiff's answers to interrogatories filed before trial. R.R. 4:23-12; see D'Agostino v. Schaffer, 45 N.J. Super. 395 (App. Div. 1957). The court concluded at the close of this hearing that the proofs were "insufficient to support a finding of wrong-doing" on Cohen's part.
Plaintiff now argues that the court's evidentiary exclusions were erroneous and prejudicial to its attempt  inspired by the court's own suggestion  to demonstrate that defendant was not entitled to retain the advances. There is no doubt that the judge, having permitted the issues to be enlarged at a late stage in the trial proceedings, was not bound by the D'Agostino line of holdings, cf. Kronmiller v. Caruso, 57 N.J. Super. 331 (App. Div. 1959), to restrict the proofs to those witnesses identified on the original narrower cause of action. We note in this respect, however, that plaintiff  despite notice more than a month in advance of the resumed hearing  did not seek leave of the court to amend its answers to interrogatories. Whether this second hearing was a separate "trial" for the purpose of applying the rigid ten-day notice proscription of R.R. 4:23-12, cf. Branch v. Emery Transportation Co., 53 N.J. Super. 367 (App. Div. 1958), we need not decide, for the reason that plaintiff was not in any event legally prejudiced by the exclusion of this testimony.
Plaintiff never availed itself of the court's suggestion that it amend its complaint. R.R. 4:15. The trial thus proceeded on the basis of the original pleadings, alleging no *81 more than that defendant was overpaid commissions. On this theory, the supplementary proceedings were completely extraneous.
But even in the posture of the case as framed by the trial judge, plaintiff's evidence would not have warranted return of the payments to Cohen. There is no doubt that an employer may recover in damages for his employee's breach of duty of loyalty. United Board & Carton Corp. v. Britting, 63 N.J. Super. 517, 532-533 (Ch. Div. 1959), affirmed 61 N.J. Super. 340 (App. Div. 1960). Moreover, upon a showing of actual injury, compensation may justifiably be withheld by the employer because of the employee's disloyalty. Bernstein v. Lipper Mfg. Co., 307 Pa. 36, 160 A. 770 (Sup. Ct. 1932); see 56 C.J.S., supra, § 81, pp. 511-513. This is not, however, the equivalent of a suit for repayment of compensation advanced, as not earned in accordance with the contract. In the absence of fraud, duress, mistake, or express or implied agreement to the contrary, a voluntary payment of wages may not be recovered from an employee, even though the latter's conduct subsequent to receipt of the payments would have disentitled him to receive them. See 56 C.J.S., supra, § 120c, p. 561. True, in the instance of a commission salesman, a showing that he accepted advances in bad faith with no intention of making sales for the employer might amount to fraud sufficient to enable the employer to recover the advances. Selig v. Bergman, 43 Wash.2d 205, 260 P.2d 883 (Sup. Ct. 1953). But no similar showing was attempted by plaintiff herein, merely an effort to demonstrate that Cohen, in addition to continuing to perform his duties as Toker's general manager, was conspiring to form and did later form a rival corporation, expended company money for a staff dinner at which the proposed rival corporation was discussed, and sold a company truck for the purpose of later acquiring it for his new corporation.
The foregoing acts, at most, might bolster an independent claim to recover the plaintiff's damages, if any, consequent *82 thereon; they do not aid Toker's effort to recover salary paid to the defendant under his employment contract. Plaintiff did not show, nor is it claimed that it could have shown by the excluded evidence, any pecuniary damages from the acts complained of. If plaintiff were to predicate a claim for damages upon the truck incident, or the staff dinner, it would be met, as to the former, by the fact it expressly conceded at trial that the truck was sold for more than it was worth; and, with respect to the dinner, by defendant's unrepudiated testimony that this was a customary employees' dinner which he was authorized to hold. There is no suggestion by plaintiff that it would have proved or was proposing to prove, in this district court action, damages from the enlistment by defendant of plaintiff's employees in his new enterprise, assuming that that action was illegal.
Affirmed.