ST. CLOUD AVIATION, INC.,
Respondent,

v.

Leslie V. HUBBELL, Appellant.

No. C8–84–451.

Court of Appeals of Minnesota.

Oct. 23, 1984.

Robert J. Feigh, Hall, Byers, Hanson, Steil & Weinberger, St. Cloud, for respondent.

Roger P. Schmidt, Schmidt & Lund, St. Cloud, for appellant.

Considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is an appeal from the entry of judgment for St. Cloud Aviation, which claimed sums owing from appellant Hubbell, a former employee, for lost profits on a sale completed after his termination, and for advances on commissions. Appellant admits that he had a "draw account" with a balance of approximately $3000 at the time of termination, but contends there was no agreement for its repayment. He claims that St. Cloud Aviation breached the employment contract by not allowing him to complete sales in progress, and, therefore, is not entitled to lost profits.

The trial court awarded damages both for the overdraft in the draw account, and for lost profits. We affirm.

## FACTS

Appellant Leslie Hubbell began work for respondent St. Cloud Aviation [St. Cloud] as a salesman in April of 1980, under a written contract of employment. St. Cloud sold both new and used aircraft, as well as aircraft services. Hubbell's sales performance was satisfactory, and he received a draw on commissions of $3,000 per month.

Hubbell had some disagreements with St. Cloud in late 1981, but continued his employment with the company. In July of 1982, however, according to his testimony, he gave verbal notice to the sales manager, Clare Wesley, that he was leaving to start his own business. Wesley admitted knowing Hubbell was seeking other employment, but denied being told Hubbell had made another commitment.

On August 4, 1982, St. Cloud was informed by a competitor, Mesaba Aviation, that Hubbell had referred a customer to them for the conversion of electric floats to hydraulic, a specialized service, and that he had requested $200 commission on this sale. St. Cloud immediately terminated him, pursuant to the following provision of the employment contract:

"Earned income or benefits through aviation sales not reported to the company is cause for immediate termination of employment."

Hubbell claimed that the parts for the float conversion were rare, and not available to St. Cloud, that the sale was initiated by Mesaba, and that he did not have a chance to report this income to St. Cloud, since it was reported by Mesaba before he was sure that he would receive it.

On the day of his termination, St. Cloud's president testified, the subject of repayment of the draw account came up and, according to the president, Hubbell stated, "You might be surprised. I might pay you."

Hubbell's employment contract contained the following provision:

"In the case of an overdraw of commissions, the overdraw will be subtracted from any future draws or commission payments."

On the day of his termination, Hubbell was working on two sales of used aircraft not owned by St. Cloud, one of which he later completed and took a profit on in his new business. St. Cloud sought, and was granted, lost profits on this sale. It

claimed the deal was so far along when Hubbell was fired that, as St. Cloud's bookkeeper testified, Hubbell told her one or two weeks earlier that she would have to wire money to the state where the plane was to be purchased, or get funds for a cashier's check.

The other sale was never completed, by Hubbell or by St. Cloud. Hubbell claims that the deal was almost complete, and that St. Cloud breached the employment contract by not allowing him to complete work on this sale.

## ISSUES

1. Was Hubbell liable upon termination for amounts received as an advance against commissions?

2. Was St. Cloud entitled to its share of profits on a sale in progress but substantially completed at the time of termination?

3. Did Hubbell have a right to complete a sale in progress when he was terminated?

## ANALYSIS

### 1. Liability for the draw account

■ Where a salesman working on commission has a draw account against commissions, there can be no recovery against him for overdrafts received in the absence of a specific contractual obligation, *Leighton v. Bancamerica-Blair Corp.*, 192 Minn. 223, 255 N.W. 848 (Minn.1934), or an express or implied agreement of repayment. *See, St. Anthony Motor Co. v. Patterson*, 175 Minn. 624, 221 N.W. 719 (1928). Recovery may also be had where the salesman has committed fraud or breached his fiduciary duty. *Joseph Toker, Inc. v. Cohen*, 67 N.J.Super. 68, 169 A.2d 838 (1961).

■ The parties' contractual provision for subtraction of overdraws from future draws or commissions clearly does not apply to terminations. St. Cloud's evidence as to an implied agreement was indicative of nothing more than a good faith intention to repay the overdraw, and was not sufficient to show an implied contractual obliga-

tion. *See, e.g., Valdosta Roofing & Supply Co. v. Lawrence*, 89 Ga.App. 168, 79 S.E.2d 10 (1953) (no implied agreement although salesman had written intent to "work off" the overdraw).

■ St. Cloud's showing of an oral promise of repayment was also deficient. Its president testified only to an ironic statement that Hubbell might surprise the company by paying.

■ A salesman may also be found liable to repay advances if he has breached his contract or his fiduciary duty to his employer. *Gibson v. J.T. Allen Agency*, 407 P.2d 708 (Wyo.1965). Here Hubbell referred a customer for a specialized float conversion, requiring hard-to-obtain parts, to a competitor. There was evidence on both sides of the issue, but the trial court could have found, and did find, that St. Cloud did have access to the parts and did lose business. The court concluded that Hubbell breached his employment contract. This breach by its very nature, was a breach of fiduciary duty, making Hubbell liable for the overdraft in his account.

### 2. Lost profits

■ Hubbell's claim that St. Cloud was not entitled to lost profits on the completed sale because it breached the employment agreement is without merit. His claim that a breach occurred because 30 days' notice was not given ignores the contract provision allowing "immediate termination" for the conduct for which he was fired.

■ Hubbell's claim that St. Cloud breached the contract by not allowing him to complete the other sale also misreads the contract. Although salesmen were given the right to consummate sales in progress, "[u]pon giving notice of employment termination," this clearly refers only to voluntary terminations, and cannot be interpreted as requiring the company to allow salesmen it had fired to continue negotiating for it.

■ Whether Hubbell did refer company business to a competitor, and earn unreported income on this referral, was a ques-

tion of fact on which this court must defer to the trial court's opportunity to assess the credibility of the witnesses. *Serbus' Estate v. Serbus,* 324 N.W.2d 381 (Minn. 1982). From the facts, the trial court could also find that the sale for which lost profits were awarded was substantially completed at the time of Hubbell's termination.

## DECISION

The evidence supported the trial court's finding that Hubbell breached his contract, and his fiduciary duty, making him liable for the draft account overdraw. The claim for lost profits on a sale completed after termination was also supported by the evidence.

Affirmed.