**BANKS ENGINEERING CO., INC.**

v.

**Michael POLONS and Denise Polons, His Wife, Appellants.**

Superior Court of Pennsylvania.

Argued March 20, 1997.

Filed July 16, 1997.

Jon Hogue, Pittsburgh, for appellants.

Dennis J. Gounley, Greensburg, for appellee.

Before TAMILIA, FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

In this appeal, we are asked to decide whether, absent a provision in an employment contract addressing the issue, an employee who is paid on a straight commission basis should be personally liable for advances in excess of commissions after employment is terminated. Because we can find no meaningful distinction between the instant case and the decision of our supreme court in *Snellenberg Clothing Co. v. Levitt*, 282 Pa. 65, 127 A. 309 (1925), we are constrained to affirm.

The facts of this case can be briefly summarized. On July 1, 1992, appellant entered into a sales representative agreement ("Agreement") with Banks Engineering Company., Inc. and Ed Banks, its General Manager (collectively "Banks"). Under the terms of this agreement, appellant was to work as an independent sales representative for the company, and was to be compensated for his services by receiving a commission based upon a percentage of gross sales. The agreement also provided:

### Article 7

#### Temporary Draw Against Commission

7.01. To compensate for low commission payments due to low initial sales, Banks will pay a draw against commission. This draw will continue until the commissions exceed the draw and this contract is in effect. Once the commissions exceed the draw the rate of payment will continue at the rate of the draw until the total amount of the draw is compensated for by commissions in excess of the draw or by other means. When the total draw has been compensated for by commissions earned or

other means the full commission will be paid and the draw eliminated.

R.R. at 16a. The agreement set the amount of the draw at $2,800 per month. (*Id.*) Before Banks released the first check to appellant in August of 1992, however, appellant was required to sign a document which provided, *inter alia:*

> It is understood that this draw is a non-interest loan and is to be paid back by commissions earned or by other means. In the event of termination of this contract any and all outstanding draw amounts will become due within ninety days. After ninety days any amounts still due will accrue interest at prime rate compounded annually.

R.R. at 145a.

Appellant worked for Banks for approximately twenty-one months, but with limited success: when appellant terminated his employment with Banks on April 10, 1994, Banks had paid appellant $34,556.45 in draws over and above commissions earned. As a result, Banks responded to appellant's notification of termination with a letter demanding reimbursement of the outstanding draw amounts within ninety days. When appellant failed to respond, Banks filed a complaint for breach of contract, seeking repayment of the $34,556.45 plus interest. (R.R. at 8a.)[1] A non-jury trial was held on May 30, 1996, at the close of which the court found in favor of Banks on the breach of contract claim. The court found, however, that the subsequent "agreement" between the parties failed for lack of consideration, and therefore refused to award interest. (Trial court opinion, 10/3/96 at 2, 4.) Post-trial motions were filed by both sides and denied, and the court entered final judgment in favor of Banks in the amount of $34,556.45. This timely appeal followed.

We note first our standard when reviewing a trial court's interpretation of a contract. "The interpretation of a contract is a question of law. In deciding an issue of law, an appellate court need not defer to the conclusions of the trial court." *Halpin v.*

*LaSalle University,* 432 Pa.Super. 476, 481, 639 A.2d 37, 39 (1994), *allocatur denied,* 542 Pa. 670, 668 A.2d 1133 (1995), *citing American States Ins. Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 181, 628 A.2d 880, 886 (1993) (other citations omitted).

Appellant presents four issues, the first three of which raise questions of contract interpretation: 1) whether the trial court erred in ignoring the clear language of the contract when it found that the money paid to appellant was a loan, and not income; 2) whether the trial court erred when construing the contract in ignoring the conduct of the parties, which treated the amounts paid to appellant as income; and 3) whether principles of contract interpretation require that the contract be construed against the drafter, Banks. (Appellant's brief at 3.) In his fourth issue, appellant argues that the "out-of-date" case law on which the trial court relied in finding in favor of Banks does not apply to the instant case in light of subsequent legislation, in view of its minority position, and because it is inapposite factually. (*Id.* at 3, 14–17, *citing Snellenberg, supra.*) Because we find that *Snellenberg* is still good law in Pennsylvania, that it is materially indistinguishable from the facts before us, and that it subsumes relevant contract analysis, we are constrained to affirm the trial court. A review of *Snellenberg* follows.

Snellenberg Clothing Company ("Snellenberg") hired Levitt as a traveling salesman who was to be paid a commission based on net sales. In addition, Snellenberg agreed to advance a drawing account of $15,000 per year, and to pay reasonable traveling expenses, " 'all such advances, either for drawing account or traveling expenses, to apply against and be deducted from' [Levitt's] total earnings during the current or succeeding years." *Snellenberg, supra* at 66, 127 A. at 310. When employment was terminated by mutual consent, Snellenberg sued to recover payments made in excess of commissions earned in the amount of $16,751.09. *Id.* at 66–67, 127 A. at 310. Levitt admitted the contract, but argued that it did not make him personally liable for the difference after ter-

---

1. The complaint joined appellant's wife as a defendant, claiming tortious interference with contract. This count was non-suited and is not a subject of the instant appeal.

mination; rather, according to Levitt, the contract only required him to repay Snellenberg for the advances and traveling expenses out of his net earnings. (*Id.*)

The trial court found in favor of Snellenberg, and the supreme court, in affirming, noted:

> We find nothing in the contract itself which leads us to a different conclusion from that reached by the court below. The advances were to 'apply against and be deducted from' [Levitt's] earnings. *The parties apparently did not anticipate earnings falling below the amount of the advances, and consequently made no express provision for the contingency.* This, however, is no reason for reading into the contract something it does not contain and thus make a new contract for the parties. Had they intended the advances should be [sic] in lieu of salary and treated as such in event the commissions earned by [Levitt] were insufficient to balance the account, it would have been a simple matter to have so stated. *In absence of provision in the contract warranting such construction, we feel constrained to treat the advances strictly as such and require return of any excess.*

*Id.* at 67–68, 127 A. at 310 (emphasis added).

■ Appellant argues that the instant case is distinguishable, first, because the parties instantly *did* anticipate earnings falling below advances; that is the whole point of § 7.01 of the agreement. (Appellant's brief at 16.) We agree that the parties instantly anticipated that commissions *initially* would be less than advances, and provided for that contingency. Nevertheless, we find the instant case indistinguishable from *Snellenberg* because in both cases, the parties failed to anticipate commissions remaining less than draws when employment ended, and thus failed to provide for *that* contingency. The fact that the agreement instantly did not provide for such a contingency is borne out by Banks' attempted modification of the contract to include a termination provision six weeks after the parties entered their original

agreement.[2] Because we find, in our reading of the clear language of the contract, no provision for the contingency that occurred, we are constrained by *Snellenberg* not to read into the contract something it does not contain. *Id.* As a result, we are compelled to "treat the advance strictly as such and require return of any excess." *Id.*

■ Additionally, because we find that the clear language of the contract controls, we cannot accept appellant's invitation to construe it against the drafter, or to look to the parties' conduct to determine what they intended. (Appellant's brief at 3.) As a general rule, agreements will be construed against the drafter only when the terms are ambiguous. *Gallagher v. Fidelcor, Inc.*, 441 Pa.Super. 223, 228–30, 657 A.2d 31, 34 (1995), *allocatur denied*, 544 Pa. 675, 678 A.2d 365 (1996). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200–202, 519 A.2d 385, 390 (1986). "[W]hen the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document." *First Home Savings Bank, FSB v. Nernberg*, 436 Pa.Super. 377, 387, 648 A.2d 9, 14 (1994), *allocatur denied*, 540 Pa. 620, 657 A.2d 491 (1995), *citing Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987) (other citations omitted). *See also Halpin, supra* at 480–82, 639 A.2d at 39 (only when the words used in a contract are ambiguous may a court examine the surrounding circumstances to ascertain the intent of the parties).

■ Furthermore, "[t]he courts are not generally available to rewrite agreements or make up special provisions for parties who fail to anticipate foreseeable problems." *In re Estate of Hall*, 517 Pa. 115, n. 7, 535 A.2d 47, 56 n. 7 (1987). *Snellenberg, supra*, instructs that when a contract does not provide for a contingency, it is not ambiguous; rather, it is silent, and the court may not "read[ ] into the contract something it does not con-

---

2. We note that Banks did not appeal the trial court's determination that the second document was not a contract because it was not supported

by consideration; therefore, that issue is not before us.

tain and thus make a new contract for the parties." *Snellenberg, supra* at 67–68, 127 A. at 310.

■ We turn next to appellant's argument that *Snellenberg* was legislatively repudiated by the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 *et seq.* and cases interpreting the same. (Appellant's brief at 15.) We cannot agree. Courts interpreting the Act have repeatedly found that it does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement. *Thomas v. North Star Steel Co., Inc.,* 838 F.Supp. 970 (M.D.Pa.1993), *reversed on other grounds,* 32 F.3d 53 (1994), *affirmed,* 515 U.S. 29, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995); *Wurst v. Nestle Foods Corp.,* 791 F.Supp. 123 (W.D.Pa.1991), *affirmed in part, reversed in part,* 975 F.2d 1553 (1992). *Snellenberg,* in contrast, addresses itself to a determination of the terms of the agreement, a determination which necessarily precedes enforcement of the agreement. Thus the Act does not supersede *Snellenberg.* Additionally, under the Act, where there is a dispute over wages due, as in the instant case, § 260.6 of the Act only requires the employer to give written notice of the amount he concedes to be due and to pay that amount within the time limitations set by the Act. 43 P.S. § 260.6. Because the only amount of "wages" at issue instantly is the amount in dispute, and because appellant conceded that he was paid all of the commissions he earned, the Act does not afford appellant a remedy.

While we are bound by *Snellenberg* to affirm the trial court, we are fully aware that *Snellenberg* represents an extreme minority view. Whereas *Snellenberg* imposes personal liability on an employee whose employment is terminated to repay any advances that exceed commissions, the overwhelming majority of jurisdictions facing the issue before us have found that, absent an express or implied agreement to repay such an excess, an employer cannot recover from an employee the excess of advances over commissions earned:

> [T]he overwhelming preponderance of case law is to the effect that while the parties may provide in the agreement for personal liability, in the absence of language, or at least some evidence, indicative of such an intention, it will generally be presumed that no liability was intended, and that the principal's sole source of reimbursement was intended to be the fund contemplated, that is, the anticipated commissions, bonus, or profits.

Michael J. Greene, Annotation, *Personal Liability of Servant or Agent for Advances or Withdrawals in Excess of Commissions Earned, Bonus, or Share of Profits,* 32 A.L.R.3d 802, 806 (1970) (footnote omitted) (collecting cases). *See, for example, First Performance Mortgage Corp. v. Bartolata,* 156 Misc.2d 1012, 595 N.Y.S.2d 638, 639 (1993) ("It is settled law that without a specific provision in the contract of employment a commissioned employee cannot be required to repay draws when his employment ends[.]").

Our research reveals that twenty-two jurisdictions have adopted this general rule, while only two, Pennsylvania and Alabama, have not. Courts following the majority rule refusing to find personal liability absent an express or implied agreement imposing such liability do so for one of three reasons. First, courts are reluctant to ascribe all of the risk of loss to an employee who engages in a joint venture with a principal, where the employee is working for the principal, and furnishing his or her time and ability to advance the principal's interest. *Id. See, for example, Steger v. Lappin,* 119 Ill.App.2d 146, 255 N.E.2d 87 (1970); *Shaler Umbrella Co. v. Blow,* 199 Wis. 489, 227 N.W. 1 (1929). As noted in 32 A.L.R.3d 802:

> Commenting that the rationale underlying the majority rule is that the employee's undertaking is in the nature of a joint enterprise with the employer, the main object of which is the furtherance of the employer's business, and that it is not to be assumed that the employee, in furnishing his time and ability, also assumes all the risk, the court held that when advances are made in regular amounts in consideration of continued activity by the employ-

ee, such regularity in payment and the fact that the employee is required to give his full time and energies to the employment relationship give rise to the presumption that the advances constitute salary or wages and thus are recoverable only from commissions.

*Id.* at 811–12, *discussing Agnew v. Cameron,* 247 Cal.App.2d 619, 55 Cal.Rptr. 733, 32 A.L.R.3d 796 (1967).

Another rationale the courts have used for adopting the majority rule is the superior bargaining power of the employer, which imposes upon him a duty to make explicit his rights under the agreement, especially where asserting those rights requires the employee to return previously transferred funds. 32 A.L.R.3d at 806, 812, *citing Joseph Toker, Inc. v. Cohen,* 67 N.J.Super. 68, 169 A.2d 838 (1961). Finally, the courts have a "settled judicial reluctance to cause a 'forfeiture' of payments already received unless it convincingly appears that such a result was intended by the parties[.]" 32 A.L.R.3d at 812, *citing Toker, supra.*

While we concede the compelling rationale behind the majority rule, we also recognize our function as an intermediate appellate court. Because "this Court's formal purpose is to maintain and effectuate the decisional law of our supreme court as faithfully as possible, we are not authorized to create or adopt a new standard." *Dominick v. Statesman Ins. Co.,* 692 A.2d 188, 192 (Pa.Super.1997), *citing Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985). Thus, we must decline appellant's invitation to find *Snellenberg* outdated.

For all of the foregoing reasons, we affirm the judgment entered by the trial court.