**Flemon V. McNEESE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58738.**

Court of Criminal Appeals of Texas, Panel No. 1.

April 16, 1980.

Johnny D. Gabriel, Jr., San Antonio, for appellant.

Bill M. White, Dist. Atty., Ed Springer, Larry A. Catlin and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and DALLY, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of forgery. It was alleged that the appellant with intent to harm and defraud another possessed a forged instrument with the intent to utter it. The punishment, enhanced by two prior felony convictions, is imprisonment for life.

The appellant asserts that the court erred in failing to quash the indictment, and that the evidence is insufficient to sustain the conviction because there is a fatal variance between the allegations of the indictment and the proof. The appellant also says the State failed to prove he knew the check was forged and that he had an intent to defraud another, essential elements of the offense.

 The forged instrument was a check. The amount of the check stated in words was "One Hundred Twenty-Seven Dollars." The amount of the check stated in figures was "$127.90." In his motion to quash the indictment the appellant urged the ". . . check is therefore ambiguous and absent an innuendo averment to explain its true meaning the indictment is fatally defective and invalid." The appellant insists that his motion to quash was erroneously overruled. V.T.C.A. Business and Commerce Code, Sec. 3.118(3) provides that in construing commercial paper "Words control figures except that if the words are ambiguous figures control." The words on the check are not ambiguous and they would control as to the amount for which the check is drawn. There is no doubt that under the applicable commercial law it can be determined from the face of the check that it was drawn in the amount of One Hundred Twenty-Seven Dollars.

The appellant recites and relies on *Lamb v. State*, 67 Tex.Cr.R. 474, 148 S.W. 1088 (1912). In that case the amount of the check stated in words was "Fifty Cents and 75/100 Dollars" and the amount of the check stated in figures was "$50.75." Under the present code, which was not in effect at that time, the check would be construed to be in the amount of $50.75. However, the court in that case did not discuss the applicable law of negotiable instruments but said and held that:

> "The indictment contains no explanatory averments, alleging for what amount the check was intended. The statute reads that any person is guilty of forgery who, with intent to defraud, shall make any false instrument in writing, purporting to be the act of another, in such manner that the false instrument would create a pecuniary obligation, and we have puzzled our brain trying to decipher what amount this check would create a legal liability for, and in the absence of any explanation we are not able to tell. Mr. Bishop lays down the rule that, if the writing is so incomplete as to have an apparent uncertainty, the indictment must allege such extrinsic facts as will enable the court to see, if genuine, its meaning. 2 Bish.Cr.Law, 545. This instrument is so uncertain on its face, in the absence of innuendo averments alleging its true meaning that the indictment should have been quashed, and the court erred in not so doing.

> "The judgment is reversed and the prosecution dismissed."

*Lamb v. State*, supra, appears to be in conflict with our holding in the present case, and it is therefore overruled. The rules of construction of the Business and Commerce Code are clear and they determine the issue raised by the appellant's motion to quash. No innuendo averments or allegations need be made in the indictment. The check would have created a legal obligation of $127.00.

The appellant also cites and quotes from *McBride v. State*, 48 Tex.Cr.R. 213, 88 S.W. 237 (1905), but the opinion in that case gives no more support to appellant's argument than the opinion in *Lamb v. State*, supra. Cf. *Robinson v. State*, 148 Tex.Cr.R. 505, 188 S.W.2d 578 (1945) and *Roberts v. State*, 138 Tex.Cr.R. 39, 133 S.W.2d 974 (1939).

The trial court did not err in overruling the appellant's motion to quash the indictment.

In his second ground of error the appellant says:

> "The trial court erred in holding the evidence sufficient to sustain the conviction when there was a material and fatal variance between the instrument set out in the indictment by its tenor and the instrument offered in evidence to support such description."

In his argument under this ground of error the appellant does not argue that there is a variance between the copy of the check set out in the indictment and the check offered in evidence. Rather appellant argues that the check when presented to the complainant did not have certain marks on it that were on it when it was offered in evidence. Since the argument does not support the ground of error and the authorities cited are inappropriate to the facts argued, no error is shown. However, we will attempt to construe the argument to determine the points of objection sought to be presented by the ground of error. See Art. 40.09, Sec. 9, V.A.C.C.P.

The appellant complains that there was a purple substance, a social security number, and initials on the check offered in evidence that were not on the check when it was presented to the complainant. The complainant, a bank teller with twenty-eight years experience as a teller, asked the appellant for his identification and from that identification she wrote a social security number, the date, and her initials on the back of the check. She testified that all of the writing on the front of the check admitted in evidence was the same as when it was presented to her. But when the check

was exhibited to her at the trial before it was admitted in evidence, she testified the check had a purple substance on it that was not on it when presented to her by the appellant. There is testimony which explains that the purple substance on the check when it was offered and admitted in evidence was nynhydrin which is a substance placed on the check to permit the identification of latent fingerprints. There is no evidence that there is a variance between the copy of the check on the indictment and the check admitted in evidence. The purple substance used to help identify the latent fingerprints which appeared on the check when it was offered and admitted in evidence but which was not on the check when it was presented does not create a variance nor render the check inadmissible in evidence.

■ The appellant says that the court erroneously overruled his motion for an instructed verdict because the State failed to prove the necessary elements of forgery. The appellant contends that the evidence is insufficient to show he had knowledge the check which he presented was forged or that he had intended to defraud another. The check was drawn on an account at the Union State Bank; this was the bank where the appellant possessed and presented it to the teller. The check was a personalized check which bore the name, address and telephone number of Lorce Duhart, and it bore a signature purporting to be that of Lorce Duhart. The check was presented by the appellant to the complainant at approximately 1:00 p. m. on February 10, 1977. Lorce Duhart, who had retired after thirty years of service in the armed forces, had been an employee for eleven years at the Union State Bank. When the check was presented to the complainant she observed that it was drawn on the account of Duhart, a fellow employee whom she knew. She, thinking the appellant was a friend of Duhart's and that he knew Duhart was a bank employee, jokingly said, "I don't think I can cash this. It might be hot." The appellant appeared astonished, then asked the complainant if Duhart worked at the bank. The complainant told appellant that Duhart did work at the bank, and since the amount of the check in writing and the amount in figures did not agree, she would find Duhart and ask him about it. She went to another part of the bank and exhibited the check to Duhart. Duhart told her that he did not write the check, that it was a forgery. Duhart took a position where he could see the appellant; he had never before seen the appellant. The appellant left the teller's cage. Duhart reported to a security officer that appellant was trying to cash a forged check. While the security officer was attempting to talk with the appellant, the appellant bolted and ran.

Duhart following this incident went to his home which he had left at 6:30 a. m. that day. He found that a plate glass window had been broken and his home had been burglarized. Clothing and other belongings were scattered about his home. Some of Duhart's checks had been removed from under a box which was in the second drawer of a chest of drawers. The check which appellant presented was one that had been taken from Duhart's home earlier that same day.

The appellant possessed and presented the check which had been stolen and forged less than seven hours before it was presented at the bank. The appellant bolted and ran when a security officer at the bank attempted to ask him about the forged check. The evidence is ample to prove that appellant knew the check was forged and that he possessed it with the intent to utter it and to defraud another.

The judgment is affirmed.