Patrick Richard KEAGAN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 66939, 66940.

Court of Criminal Appeals of Texas,
Panel No. 3.

June 10, 1981.

· George R. Trimber, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, George Kredell and M. Eugene Grant, Jr., Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

These are appeals from orders revoking appellant's two probations, which appeals we have consolidated.

```
AREA SURVEYING CO.
P. O. BOX 15643    293-5684
FORT WORTH, TEXAS  76119
RICHARD KEAGAN
AREA SURVEYING CO.   $135 AND 00 CTS
ADVANCE
FOREST HILL STATE BANK
FORT WORTH, TEXAS
         111905793  701  268 5
```

Appellant makes no complaint regarding the hearing on the State's motions to revoke his probations, but contends that the orders of revocation are invalid, claiming they are predicated upon void indictments, to which he pled guilty and was accorded two probations. He, thereafter, by violating several conditions of his probations, caused the trial court to revoke the probations.

Due to his complaints, we set out the two indictments in pertinent part.

NO. 16,706

... on or about the 14th day of February 1979, [appellant], did then and there intentionally and knowingly with intent to defraud and harm another, pass to Jo Ann Duty, a forged writing knowing such writing to be forged, and such writing had been so made that it purported to be the act of Clarence W. Hart who did not authorize the act, and said writing was a check of the tenor following:

```
                                      5080

                         FEBRUARY 14, 1979
                              $135.00
                              DOLLARS

                         CLARENCE W. HART
                           00000 13500
```

NO. 16,707

... on or about the 14th day of March, 1979, [appellant] did then and there intentionally and knowingly with intent to defraud and harm another, pass to Judy Eck, a forged writing knowing such writing to be forged, and such writing had been so made that it purported to be the act of Brent Mezell who did not authorize the act, and said writing was a check of the tenor following:

```
FULTON & MIZEL, SURVEYING, INC.              FIRST OF FORT WORTH  $700
1020 MACON ST., SUITE 12  (817) 335-3625  THE 1ST NATIONAL BANK OF FT. WORTH
FORTH WORTH, TEXAS  76102
                                               DECEMBER 16, 1978
    PAY TO THE ORDER OF
            PATRICK KEAGAN                          $23.49
            TWENTY-THREE AND 49/100                 DOLLARS
THIS CHECK IS IN FULL SETTLEMENT OF ACCOUNT AS SHOWN HEREON
1978
12-16    EXPENSE ADVANCE                         $25.00
         S.S.                                     1.51
                                                $23.49
                                                 /S/ BRENT MIZELL
```

Appellant claims the first indictment is void because: "This indictment was fatally defective because there was an ambiguity in the tenor clause." His contention is bottomed upon the word "advance," he complaining that "there is nothing in the indictment to explain the meaning of this word," and urges "that it is well settled law that the indictment must explain every ambiguous or meaningless expression contained therein." He relies upon *Roberts v. State*, 138 Tex.Cr.R. 39, 133 S.W.2d 974 (1939), for authority.

Appellant's reliance upon *Roberts*, supra, is misplaced for there this Court was confronted with a document, the face of which showed it could have bee neither (1) a promissory note, (2) a conditional sales contract, or (3) a chattel mortgage. We simply held in *Roberts* that "inferences are not allowable in an attempt to assist the pleader in setting forth in an indictment in plain and intelligible language the violation of the law that is the basis of the complaint." We did not hold, however, that every unintelligible word in a forgery indictment must be explained. *Roberts* was predicated upon the decision of *McBride v. State*, 48 Tex. Cr.R. 213, 88 S.W. 237 (1905), upon which appellant also relies. In *Roberts*, quoting from *McBride*, we said:

\*        \*        \*        \*        \*        \*

'If the instrument in writing alleged to be forged contains unintelligible words or abbreviations, or misspelled or ambiguous words or figures, the indictment should explain what was intended thereby,' citing *Colter v. State*, 40 Tex.Cr.R. 165, 49 S.W. 379; *Crawford v. State*, 40 Tex. Cr.R. 344, 345, 50 S.W. 378; *Polk v. State*, 40 Tex.Cr.R. 668, 51 S.W. 909; *Lynch v. State*, 41 Tex.Cr.R. 209, 211, 53 S.W. 693; *Lamb v. State*, 67 Tex.Cr.R. 474, 148 S.W. 1088.

In 19 Tex.Jur. p. 852, we find the following:

'Irrespective of the character of the instrument involved, the indictment must explain every ambiguous or meaningless expression contained therein,' citing authorities. *Id.* at 976.

\*        \*        \*        \*        \*        \*

The State responds as follows and also contends that *McBride*, supra, has been overruled by *Lamb v. State*, 67 Tex.Cr.R. 474, 148 S.W. 1088 (1916), and argues as follows:

The check appears on the indictment in haec verba. The term "advance" appears below the payee clause of the check and above the name of the payor bank. It is clear that the term 'advance' was placed on the check as the reason for making the check. In that context, it is readily apparent that the term 'advance' is meant for 'advance payment', a term well known in the commercial world as a payment made in anticipation of a contingent or fixed future liability. Therefore, the term 'advance' was not required to be explained in the indictment and no error is shown under Appellant's second ground of error.

Although the State is correct that a panel of this Court did overrule *Lamb*, supra, in *McNeese v. State*, 596 S.W.2d 906 (1980), upon which appellant also relies for authority, its inference that *McBride*, supra, was also overruled by *McNeese*, supra, is erroneous.

■ In *McNeese*, Judge Dally clearly pointed out that the *words* on the check involved reflected "One Hundred Twenty-Seven Dollars," whereas the *figures* reflected "$127.90." By provisions of the applicable section of the Business and Commerce Code, see Sec. 3.118(3), V.T.C.A., "Words control figures except that if the words are ambiguous, figures control." In *Lamb*, the words were "Fifty Cents and $^{75}/_{100}$ Dollars" and the figures were "$50.75." If the same case were before us today, we would construe the check to be in the amount of $50.75. "However, the court in [*Lamb*] did not discuss the applicable law of negotiable instruments," which we did in *McNeese*. Furthermore, the case of *McNeese* involved a motion to quash an indictment, whereas here appellant is claiming that the indictment is null and void. In a collateral attack upon an indictment, be-

fore relief is mandated, the indictment must be so defective as to state no offense at all against the laws of this State. See *American Plant Food Corp. v. State*, 508 S.W.2d 598 (1974), appeal dismissed 419 U.S. 1098, 95 S.Ct. 767, 42 L.Ed.2d 795 (1975). We find this indictment does state an offense.

■ We agree with the State that the word "advance," in its strictly etymological significance, has an ordinary, common and well known meaning in both common parlance as well as in the commercial world. It indicates money was paid before or in advance of the proper time for payment, and implies a looking forward to a time when the money will be due the recipient. See *Pargman v. Maguth*, 64 A.2d 456, 458, 2 N.J.Super. 33 (Super.Ct.App.Div.1949). In sum, the word "advance" is such a common, well known word that, as applied to this cause, it is clear from the indictment that the word was placed on the check as the reason for issuing or giving the check.

■ We, therefore, disagree with appellant and overrule his contention. We hold for the above reasons that where the forged instrument is a check, it is not necessary for the indictment to explain the meaning of the word "advance," should the word appear on the forged check.

As to the second indictment, appellant claims it is void because "there is a variance between the purport and tenor clauses as to the name of the maker," his complaint being bottomed upon the apparent discrepancy between the names "Brent Mezell" and "Brent Mizell," he contending this constitutes a fatal variance between the clauses. We disagree.

The State agreed with appellant in its brief filed in the trial court and the trial court also agreed that this was reversible error. The trial court, however, wrongfully chose to treat appellant's brief as a "Petition for Writ of Habeas Corpus," cf. Art. 11.07, V.A.T.C.C.P., hereinafter cited as C.C.P.,[1] but recommended that this Court grant relief.

By the provisions of Art. 40.09, C.C.P., a trial court has no authority to treat a case properly appealed in the same posture or context as one originating under Art. 11.07, *supra*. Art. 40.09, Sec. 12, C.C.P., is explicit by its mandatory wording:

It *shall* be the duty of the trial court to decide from the briefs and oral arguments, if any, whether the defendant should be granted a new trial by the trial court. (emphasis added)

\*   \*   \*   \*   \*   \*

■ Under our appellate procedure, it is first the duty of the trial court to decide whether the defendant should be accorded any relief in his appeal. This statutory duty may not be relegated or delegated to this Court by giving the appellant's appeal a different name. Only if the trial court refuses to grant an appellant a new trial shall the cause be transmitted to this Court. See Art. 40.09, Sec. 12, C.C.P.

We will therefore, as the cause was transmitted to this Court pursuant to Art. 40.09, C.C.P., treat the action of the trial court as denying appellant a new trial.

It is first observed appellant is making a post-conviction, collateral attack upon the indictment.

■ It is axiomatic that an indictment which is fundamentally defective will deprive a trial court of jurisdiction and will not sustain a judgment of conviction. A judgment based upon a void indictment may be raised for the first time in this Court or in any post-conviction proceedings. See *Ex parte County*, 601 S.W.2d 357 (1980). However, before relief is mandated, if there is a collateral attack upon an indictment, the indictment must be void; it must be so defective as to state no offense against the laws of this State. See *American Plant Food Corp. v. State*, supra.

---

1. Interestingly, the trial court, in cause number 16,706, see *supra*, disposed of appellant's contention, stating: "Therefore, the Court recommends that the Court of Criminal Appeals *af-* *firm* the revocation of Appellant's probation in that cause" and in its order stated that this was being done pursuant to Art. 40.09, Sec. 12, C.C.P.

Appellant is before this Court appealing an order of the trial court revoking his probation. He is making a collateral, post-conviction attack upon the original indictment. The record shows that after being properly admonished by the trial court, appellant entered a plea of guilty to the indictment and waived his right of trial by jury. In support of his claim, he relies totally upon the wording of the indictment. We are not furnished with a transcription of the original plea of guilty proceedings and, not being omnipotent, we are unable to ascertain from the record before us what actually occurred when appellant entered his plea of guilty.

Furthermore, it is not known from this record whether a determination that the names "Brent Mezell" and "Brent Mizell" are idem sonans was made by the trial court when the appellant originally entered his plea of guilty. See *Martin v. State*, 541 S.W.2d 605, 607 (1976).

Because of the nuances of sound in a witness' articulation of a name, the doctrine of idem sonans was adopted by this Court. In *Pye v. State*, 71 Tex.Cr.R. 94, 154 S.W. 222 (1913), a forgery case which was affirmed, the name of the complainant was "Rene Perry," but the name signed to the alleged forged note was "Reen Perrey." We said in *Pye*:

\* \* \* \* \* \*

The law not regarding orthography, no harm comes from misspelling a name, provided it is idem sonans with the true spelling . . . . If the names may be sounded alike without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial . . . . the true rule being that the misspelling, to be material, must have changed the word intended into another word having a different meaning. *Id.* at 224.[2]

\* \* \* \* \* \*

In *Chaverea v. State*, 141 Tex.Cr.R. 592, 150 S.W.2d 241 (1941), this Court also said:

\* \* \* \* \* \*

. . . The rule of idem sonans is stated as follows in Branch's Ann.Tex.P.C., sec. 22, page 11: 'If the names may be sounded a like without doing violence to the power of the letters found in the variant orthography, or if the name as stated be idem sonans with the true name, the variance and misspelling is immaterial.' And in 30 Tex.Jur., page 602, it is said: 'This phrase means "of the same sound," and names are idem sonans if the attentive ear finds difficulty in distinguishing them when pronounced, or if common and long-continued usage has made them identical in pronunciation, irrespective of the rules of orthography. In other words, identity of sound is regarded as a surer method of measuring the similarity of names than identity of spelling, and so long as the names can be sounded alike 'without doing violence to the power of the letters,' any variation in orthography is immaterial, provided the misspelling does not transform the name into a wholly distinct appellation. *Id.* at 242.

\* \* \* \* \* \*

It is not every variance between the purport and tenor clauses that will render a conviction fatal. Counsel for the State relied upon *George v. State*, 560 S.W.2d 93 (1978), and *McFadden v. State*, 544 S.W.2d 159 (1976), in making his confession of error. A review of those cases reflects only adherence to the general rule that if an indictment contains a purport clause, that clause must correspond to the tenor of the instrument charged to be a forgery. The opinions do not, however, take into account the doctrine of idem sonans, for the very obvious reason that the doctrine was not applicable to those causes.

---

2. "If the name, as spelled in the document, though different from the correct spelling thereof, conveys to the ear, when pronounced according to the commonly accepted methods, a sound practically identical with the correct name as commonly pronounced, the name thus given is a sufficient identification of the individual referred to, and no advantage can be taken of the clerical error." *Black's Law Dictionary* 670–671 (5th ed. 1979). See also *Pedrosa v. State*, 155 Tex.Cr.R. 155, 232 S.W.2d 733, 735 (1950).

Appellant additionally relies upon the cases of *Webb v. State*, 47 Tex.Cr.R. 305, 83 S.W. 394 (1904) and *Westbrook v. State*, 23 Tex.App. 401, 5 S.W. 248 (1887). In *Westbrook*, supra, this Court's predecessor, the Court of Appeals, merely held that "Chapman and Chatman are not the same name." The Court thus applied, but did not discuss the doctrine of idem sonans. In *Webb*, supra, the doctrine of idem sonans is simply not applicable to the facts of the case for there the purport clause contained the name "Oz Smith," whereas the tenor clause stated the name to be "@ Smith."

■ We reiterate. The law does not treat every slight variance in an indictment or information, if trivial, such as the misspelling of a like-sounding name, as fatal. It is apparent to us that the name "Mezell" could be pronounced "Mizell," and vice versa. We further observe that the name of the purported maker of the forged check is "Mezell," whereas the forger, appellant, spelled the name "Mizell." We therefore hold in this cause that "Mezell" and "Mizell" are idem sonans, and that the variance is not of sufficient materiality as could have mislead the appellant when he entered his plea of guilty. The mere difference in the spelling of the names does not make this indictment fundamentally defective and void. Again, appellant did not complain of the indictment when he entered his plea of guilty. He is now foreclosed in this cause by the doctrine of idem sonans from making a collateral attack upon the indictment.

■ We continue to subscribe to the rule that if there is an irreconcilable repugnancy between the purport and tenor clauses in a forgery indictment, this will render such an indictment fatally defective. We admonish prosecutors who prepare indictments and informations: "Especial care should be taken that there be no repugnance between the purport and tenor clauses in [forgery] indictments; for if there is, not only will the indictment be ill when it is necessary to set out the purport, but also when it is not." *Roberts v. State*, 2 Tex. App. 4 (1877). However, in this cause, by invoking the doctrine of idem sonans, we do not find an irreconcilable repugnancy between the purport clause and the tenor clause.

Finding no reversible error in either of appellant's causes, we affirm the orders of the trial court revoking his probations.